## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ARKANSAS,

### AT THE JULY TERM, A. D. 1855.

16 243
64 466

## WHEAT AT AL. vs. MOSS ET AL. USE, &c.

It is a general rule (but with exceptions, *Watson et al. vs. Palmer et al.*, 5 *Ark. Rep.* 501,) that, where a general replication is put in to an answer in chancery, all the allegations, which are responsive to the bill, shall be taken as true, unless disproved by two witnesses, or by one witness with pregnant circumstances: and, also, that every allegation, not directly responsive to the bill, but stating matter in avoidance, or in bar of the plaintiff's claim, must, under such circumstances, be fully proved, or it will have no effect.

The charges in a bill by a judgment creditor of one of the defendants, to subject certain real estate to the payment of his judgment, were, that such defendant had purchased the real estate with his own money, but had caused the title to be made to his co-defendant to delay and defraud his creditors: The answer stated that he did not purchase with his own money, but with money in his hands as administrator, and that the deed was executed to the co-defendant, to hold in secret trust for the benefit of the heirs: HELD, That so much of the answer was responsive to the bill.

But the answer proceeding further to state that, at the time of the purchase, the co-defendant advanced a portion of the money, which she borrowed, and executed a mortgage on the property to secure the payment, and afterwards borrowed money to pay off such mortgage, and executed a second mortgage to secure the payment thereof: HELD, that this was a distinct transaction, not responsive to the bill, but new matter in avoidance.

An administrator is not authorized to invest in real estate or otherwise, the balance in his hands, as such; but should distribute it to the representatives of the intestate, if known; and, if unknown, put it out at interest, under the direction of the Probate Court, until called upon to pay it over.

Where an administrator purchases property with money in his hands, due to the estate of his intestate, and causes the title to be made to another—there being a judgment and execution against him at the time, and no property of his own out of which to satisfy the judgment—the court may well presume, as between the judgment creditor and the parties to the purchase, that the administrator had converted the assets to his own use; that the purchase was made for his individual benefit, and that the transaction was intended to delay his creditors.

A prior incumbrancer may properly be made a party to a bill to subject real estate to sale; but he is not a necessary party.

### *Appeal from Hempstead Circuit Court in Chancery.*

Hon. SHELTON WATSON, Circuit Judge.

S. H. & B. F. HEMPSTEAD, for appellants.  1. Where a general replication is put in to an answer, and the parties proceed to a hearing, the statements in the answer responsive to the bill, are to be taken as true, unless disproved by two witnesses, or one witness and strong corroborating circumstances. 1 *Gill & J.* 270; 3 *Gill & J.* 425; 2 *Blackf.* 324; 1 *Paige* 239; 3 *Wend.* 532; 4 *Eng.* 550.

The bill charges fraud, and sought discovery, and the answer was conclusive.  1 *Bibb* 253; 1 *Day* 156; 1 *Wend.* 583; 3 *Paige* 557.

In this case, the answer denies the fraud alleged; and there was no proof in support of the bill.  Fraud may be proved by circumstances, but it is not to be presumed.  4 *Eng.* 485.

2. Nance, a mortgagee, ought to have been made a party; and advantage may be taken of that at the hearing or on error.

*3 Ark.* 364; *Cooper's Eq. Pl.*, 33, 185; *Mitf. Eq. Pleading* 180; 6 *Vesey Jr.* 573.

CURRAN & GALLAGHER, contra. The defendants below admit that the lots were paid for with money furnished by the judgment debtor, Samuel C. Wheat, but set up in avoidance that it was in fact held by him as administrator of McCormick's estate. Where a party admits a fact, and insists on a distinct fact, by way of avoidance, he must prove it. *Hart vs. Ten Eyck* 2 *John. Ch. R.* 65, *and the cases there cited; Roberts vs. Totten,* 13 *Ark. Rep.* 609.

Another strong circumstance showing that the property was held in trust for Samuel C. Wheat, is that the answer states, that when Salome B. Wheat borrowed the money from Nance to pay Gibson, she at the same time assumed, and included in the mortgage to Nance, a debt due from Samuel C. Wheat to Nance.

If it had been proven that the money belonged to Samuel C. Wheat, *as administrator*, the heirs, by proving that their money had been used in the purchase, might, *as against the administrator*, enforce their lien on the property; but could they do so as against creditors and third persons? If they could, they are not bound to do so—they could proceed against the administrator on his bond.

True, the defendants deny fraud; but they, at the same time, admit such facts as show that the property is liable for the debts of Samuel C. Wheat.

Nance might have been made a party, but was not a necessary party. It is not necessary to make prior incumbrancers parties—the only effect of omitting them, is that they are bound by the decree. *Rose vs. Page,* 2 *Sim. Rep.* 471; *Delabere vs. Harwood,* 2 *Swanst. Rep.* 144; *Wilson vs. Trustees of Real Estate Bank,* 6 *Eng. Rep.* 44.

Mr. Chief Justice ENGLISH delivered the opinion of the Court. In October, 1851, William Moss, and Matthew Moss, (for the

use of the latter,) filed a bill on the chancery side of the Hempstead Circuit Court, against Samuel C. Wheat, and Salome B. Wheat, alleging, in substance, as follows :

That, in June, 1845, complainants obtained a judgment on the law side of said court, against Samuel C. Wheat, for $332 74 debt, $13 68 damages, and for costs, &c.; the debt bearing ten per cent. interest. On the 11th August, 1845, an execution was issued upon the judgment, and a tract of land levied upon and sold for one dollar, and the writ returned unsatisfied as to the residue of the debt, &c. On the 1st April, 1846, another *fi. fa.* was issued, levied upon lands, which were sold for $10, and returned unsatisfied as to the residue, &c. On the 9th June, 1847, another execution issued, levied upon two lots in the town of Washington, sold for $15, and returned unsatisfied as to residue, &c. Another *fi. fa.* issued the 20th September, 1851, which was returned, no property found. A transcript of the judgment, several executions and returns, is exhibited.

That about the 1st of March, 1849, Samuel C. Wheat purchased of one James Gibson, lots one and two, in block thirty-one, situate in the town of Washington, of the value of $1200, being, at the time, indebted to complainants as aforesaid. That he paid for said lots out of his own individual money; but intending to hinder, delay, cheat, and defraud complainants, combining and confederating with Salome B. Wheat, caused Gibson and wife to convey the lots, by deed bearing date 1st March, 1849, to the said Salome B. Wheat, who since held the title thereto.

That the conveyance of the lots to Salome B. Wheat, was merely voluntary on the part of Samuel C. Wheat, and without any valuable consideration whatever, passing from her to him; and that she held the title to the lots, in trust, and as a trustee for complainants, as creditors of said Samuel C. Wheat.

*Prayer*, for decree subjecting the lots to the satisfaction of the amount remaining due upon the judgment at law.

The defendants filed a joint and several answer. They admit the recovery of the judgment, and the issuance of executions there-

OF THE STATE OF ARKANSAS.    247

Term, 1855.]          Wheat et al vs. Moss et al. use, &c.

on as charged in the bill.   They also admit that Samuel C. Wheat
purchased the lots of Gibson, as in the bill alleged, but deny that
said lots were purchased with the means of the said Samuel C.,
and for the purposes as in the bill charged.   But, on the contrary,
they aver the facts to be, that said Samuel C., at the time the
purchase was made, was, and still is acting as the administrator
of one Terence McCormick, late of said county of Hempstead.
That there had come to his hands, as such administrator, the sum
of $500 belonging to said estate.   That the price agreed upon
with Gibson, for the lots, was $700, and Salome B. being doubt-
ful of the propriety of said Samuel C., appropriating said sum of
$500, belonging to the estate of McCormick, she and he consul-
ted in regard to it, when it was finally agreed and understood
between them, that if the purchase was made, the conveyance
should be taken to her, as trustee, to hold in secret trust for the
use and benefit of the heirs and distributees of McCormick.   That
on this understanding, Samuel C. closed the trade with Gibson
for the lots, paying him the $500 belonging to the estate of Mc-
Cormick, and Gibson and wife conveyed them to said Salome B.,
as alleged in the bill.   Whereupon, she executed to Gibson her
writing obligatory for $200, balance of the purchase money, pay-
able at twelve months, and made him a mortgage back upon the
lots to secure its payment, which was duly acknowledged and re-
corded.

Salome B. further answers, that on the maturity of the mort-
gage debt, she was unable to procure the money to pay it, and
Gibson pressing her for payment, and being about to proceed for
foreclosure and sale of the lots, she caused application to be made
to Ezekial Nance for money to discharge the mortgage.   That he
agreed to let her have the means, provided she would assume the
payment of a small sum due him, from said Samuel C. Wheat,
and then secure the payment of the whole, by a mortgage upon
the lots.   That finding that she could do no better, rather than
have the lots sold to pay Gibson's debt, she accepted the terms
proposed by Nance, who furnished her with the money to pay

248 CASES IN THE SUPREME COURT

Wheat et al. vs. Moss et al. use, &c. [JULY

Gibson, and he entered satisfaction upon the record of his mortgage. That said Samuel C. Wheat was indebted to Nance in about the sum of $150 00, which, added to the sum advanced by him, to discharge Gibson's mortgage, made $375 00, for which said Salome B. Wheat, on the 1st day of May, 1850, executed to Nance, her obligation, payable on the 1st day of January, 1851, with interest, at ten per cent.; and, at the same time, gave him a mortgage upon the lots in question to secure the debt, upon which nothing had been paid, and the mortgage continued in full force.

Respondents further absolutely deny that said Samuel C. paid for said lots out of his own individual means, and had the same conveyed to said Salome B., to hinder and delay his creditors, but they aver the truth to be, that the lots were paid for, in part, as before stated, and that the sum received from Nance remained unpaid. They further deny that said Salome B. held, or ever held said lots, in secret trust, for the use and benefit of said Samuel C., or subject to his control or disposal; or that she ever held them in trust, as a trustee, for the use and benefit of the complainants, as creditors of said Samuel C. But Salome B. avers, that if she held in trust for any one, it was for the heirs and distributees of the estate of McCormick, and no other person, or persons: first paying, however, the debt due to Nance, and secured by the said mortgage to him. The answer is verified by the affidavits of both defendants.

At the May term, 1852, the cause was submitted for hearing, and the court being of the opinion that Nance had an interest in the subject matter of the suit, ordered the complainants to amend their bill, so as to make him a party, and serve him with process, returnable to the next term. The defendants objected to Nance being made a party, after the cause had been submitted. At the May term, 1853, it appearing to the court that complainants had failed to amend the bill so as to make Nance a party, in accordance with the order previously made, it was, on motion, and by consent, decreed that the order be vacated, &c., and that the

cause proceed to final hearing, between the original parties to the bill.

The cause was accordingly submitted upon bill, answer, and replication, and a transcript of the Probate Court record of the settlement of the estate of McCormick by Samuel C. Wheat, as administrator, offered as evidence by complainants; and copies of the mortgages executed to Gibson and Nance, by Salome B. Wheat, offered as evidence by the defendants.

The transcript from the Probate Court record, shows that Samuel C. Wheat made application for letters upon the estate of McCormick, on the 10th of February, 1849, stating in an affidavit made by him at the time, that some three years prior thereto, the deceased had a brother living in the State of Maryland, whose name he did not know, nor whether he was yet alive, nor where he resided.

The transcript also contains an account filed by Samuel C. Wheat, as administrator, in the Probate Court, perhaps about the 10th of October, 1851, (judging from the time to which interest on some of the items is counted) for settlement; in which he charges himself with assets amounting to $813 44, deducts $81 34 for his commissions, and exhibits in his hands a balance of $732 10, of which he states $599 10 is in cash, and the residue in an uncollected note. He also states, that but one claim for $18 50, had been established against the estate, "and the estate not being indebted, as appears from the foregoing statement, the amount now on hand is ready, and subject to the order of this honorable court."

The mortgages to Gibson and Nance upon the lots, bear date, and appear to have been made to secure the sums, as stated in the answer of the defendants. Upon the pleadings and evidence, the court below was of the opinion, and found that there remained due and unpaid, upon the complainants' judgment at law against Samuel C. Wheat, $605 84; that he purchased the lots in question on the first day of March, 1849, and paid for them out of his own individual money, and procured them to be conveyed to de-

17B

fendant, Salome B. Wheat, thereby intending to hinder, delay, and defraud his creditors; and that they were conveyed to her without any good or valuable consideration, either in law or equity, and that the same was merely voluntary on the part of said Samuel C., and that the lots and premises ought to be subject to the debt of the complainants. It was, therefore, decreed by the court, that the defendants pay to the complainants, the amount of their said judgment, with costs, and that in default thereof, the complainants should have execution upon the decree, and levy upon the lots, &c., for satisfaction, &c. The defendants appealed from the decree to this court.

1. It is insisted by the appellants, that the matters set up in the answer, are responsive to the allegations of the bill, and should have been disproven by two witnesses, or one with strong corroborating circumstances; the answer being under oath.

The appellees submit, that appellants admitted in the answer, that the money with which the lots were purchased of Gibson, was furnished by Samuel C. Wheat, and that the additional statement that he used in the purchase, a fund held by him as administrator of McCormick's estate, was matter in avoidance, and to be proven by appellants.

The office of the answer, like a plea in a suit at law, is to deny and put in issue, the allegations of the bill, or to confess and avoid them.

It is a general rule, that where a general replication is put in, and the parties proceed to a hearing, all the allegations of the answer which are responsive to the bill, shall be taken as true, unless they are disproven by two witnesses, or by one witness, with pregnant circumstances. It is also a general rule, that every allegation of the answer, which is not directly responsive to the bill, but sets forth matter in avoidance, or in bar of the plaintiff's claim, is denied by the general replication, and must be fully proved, or it will have no effect. *Hagthorp use et al. vs. Hooks ad*, 1 *Gill & Johnson's Rep.* 280. The first of the above general rules, is subject, of course, to such exceptions as are referred

to by this court in *Watson et al. vs. Palmer et al.*, 5 *Ark Rep.* 501.

The following quotation from the opinion of the court in *Green vs. Vardiman*, 2 *Blackf. Rep.* 328, is applicable to the question before us : "It is a general rule, that an answer is to be taken as true, unless disproved by two witnesses, or by one witness and corroborating circumstances; and when the term answer is taken in its strictest sense, we believe there are no exceptions to this rule: but an answer in this sense, is not what a defendant may say in his own behalf, but what he says directly responsive to the charges in the bill. Matters, however, that are set up in avoidance, that are not responsive to the bill, when in issue, must be proved by the defendant, for if the answer admits a fact, but insists on a *distinct fact* in avoidance, the defendant must prove this fact. *Hart vs. Ten Eyck*, 2 *John. Ch. Rep.* 62. On this part of the subject, there are many nice distinctions and cases that it is difficult to reconcile. An executor, in his answer to a bill by the creditors for an account of the personal estate, stated that he had received £1100 ; that in making up his accounts, he gave his bond for £1000, and that the testator gave him the other £100 for his trouble and pains in his business. It was held, that this answer did not discharge the defendant of the £100; the gift by the testator being a fact *distinct from what he was required to answer*, and so in avoidance of the demand against him. *Gilb. Ev.* 57; *S. C., cited also in Bull. N. P.* 237, and in 1 *Stark Ev.* 292. But it was held, that if it had been one fact, as that the testator gave him £100, it ought to have been allowed. *Ib.* So in *Ridgeway vs. Darwin*, 7 *Ves.* 404, an executor charged by his answer, is not permitted to discharge himself by affidavits of payment made to the testator in his lifetime. So, a party charging himself in a schedule to his answer, cannot discharge himself in another schedule showing disbursements. *Boardman vs. Jackson*, 2 *Ball & Beat.* 385. And a party charged by his answer, cannot discharge himself by it, unless the whole is stated as *one transaction;* as that, on a particular day, he received a sum and

paid it over; not that on a particular day he received a sum, and on a subsequent day he paid it over. *Thompson vs. Lamb*, 7 *Ves.* 587. Also, to a bill by the assignee of a note, stating that he gave a valuable consideration for the note, and requiring an answer to the whole bill, the answer stating that the note was signed for a usurious consideration, requires proof. *Green vs. Hart*, 1 *John. Rep.* 580. There are many similar cases which seem to render it doubtful what matters in an answer require proof, and what are supported by the answer itself: and those cases that turn on the unity of the transaction, which creates a charge and discharge, are peculiarly perplexing. But we cannot conceive that any of those cases are intended as exceptions to the general rule: that the answer, so far as it is strictly such, being directly responsive to the bill, is to be taken as true. For, when the bill requires a disclosure of such matters as may discharge the defendant, he is compelled to answer and disclose those matters; and if the disclosure amounts to a discharge, he is entitled to the full benefit of it. But although the bill might not require a disclosure of the matters set up in avoidance, yet if the charge and discharge arise from one *indivisible transaction*, and the answer sets forth that transaction, the defendant shall have the full benefit of the discharge. But we conceive the principal difficulty in all these cases turns on the question, what facts in the answer are responsive to the bill, and what are set up in avoidance. Such was the point on which the case of *Green vs. Hart*, and some others, evidently turned."

The learned judge, delivering the opinion of the court, concludes upon this review of authorities, by stating the following as a general rule: "We are, therefore, of opinion, that where the answer is confined to such facts as are necessarily required by the bill, and those that are inseparably connected with them, forming a part of the same transaction, the answer is to be taken as true, when it discharges, as well as when it charges the dedendant."

In the case of *Whiting & Slark vs. Beebe et al.*, 7 *Eng. R.*

588, this court, by Mr. Justice WALKER, said: "Where an answer · admits the receipt of money at one time, and sets up that at another time, and in another adjustment, it was re-paid, the re · payment is the affirmance of a new fact, and must be proved." See, also, on the same subject, *Roberts vs. Totten*, 13 *Ark. R.* 609.

Testing the case at bar by the general rules above stated, and which appear to be well sustained by the authorities, there is but little difficulty in arriving at a correct result. The substance of the bill is, that Samuel C. Wheat being a judgment debtor of appellees, purchased the lots of Gibson, with his own money, and caused them to be conveyed to Salome B. Wheat, to hold in secret trust for his benefit, in fraud of the rights of his creditors.

The answer admits that Samuel C. was indebted to appellees; that he purchased the lots of Gibson, and caused them to be conveyed to Salome B., as charged in the bill, but denies that they were purchased with the individual means of Samuel C., and, on the contrary, states, that the price of the lots was $700; that Samuel C. used $500 in the purchase of them, which he had in his hands, as administrator of McCormick; that Salome B. executed her obligation to Gibson for the balance of the purchase money; the conveyance was taken to her, and she gave a mortgage back to secure to Gibson the payment of the obligation; that it was agreed between her and Samuel C., that she was to hold the lots in secret trust, for the benefit of McCormick's heirs, and that there was no design in the transaction to hinder, delay, or defraud the creditors of Samuel C. Wheat.

Beyond question, this portion of the answer is directly responsive to the bill. It would be surely unfair to take as true the naked admission, that the lots were purchased by Samuel C. of Gibson, and conveyed to Salome B., and treat as matter in avoidance the further statement made directly in connection with the admission, and in reference to the same transaction, the denial that they were paid for out of his individual means, and the averment of the truth to be, that the cash payment was made with

money held by him in trust, &c., and that there was a deferred payment, secured by mortgage, &c.

The subsequent transaction with Nance, the borrowing money of him upon a new mortgage to discharge Gibson's incumbrance, was a separate and distinct transaction from the original purchase enquired of by the bill, occurring at a different time; and so much of the answer as relates to this transaction with Nance, was not responsive to the allegations of the bill, but new matter in avoidance.

But though an answer may be responsive to the bill, yet it may, in detailing the circumstances of the transaction charged and denied to be fraudulent, overcome and destroy the force and effect of its own denial. *Barraque and wife vs. Siter, Price & Co.*, 4 *Eng. R.* 551; *Cunningham vs. T. & G. Freeborn*, 3 *Paige Ch. R.* 557.

The answer of the appellants, in detailing the circumstances of the transaction in question, presented several features which could hardly have failed to strike the attention of the chancellor; and which, perhaps, materially influenced his decision. The bill charges, the exhibits prove, and the answer admits, that at the time the lots were purchased of Gibson, and for some time before, the appellees had a judgment against Samuel C. Wheat, which they had been making almost fruitless efforts to satisfy by execution. The answer states that $500 used in the purchase of the lots, was not the money of Samuel C. Wheat, but that it was a trust fund which he held as an administrator. Taking this to be true, and how does he stand upon the record, and with what claim to the favor and protection of the chancellor, does he make the admission? He took an oath, faithfully and according to law, to administer and pay over the assets of the estate of Mc-Cormick, which might come into his hands or possession. *Dig.*, *ch.* 4, *sec.* 12. The first duty of an administrator is to collect the assets, and pay the debts of his intestate, and then to distribute the residue (deducting expenses) to the heirs of the deceased. The debts are paid, and the estate distributed under the direc-

OF THE STATE OF ARKANSAS. 255

TERM, 1855.]　　　　Wheat et al. vs. Moss et al. use, &c.

tion of the Probate Court. The estate of McCormick not being indebted, according to the account current filed in the Probate Court by Samuel C Wheat, as his administrator, it was then his duty, under the order of the court, to distribute the money shown to be in his hands, to the legal representives of the intestate; and if they were non-residents, unknown, incompetent to receive and give acquittance for it, or did not appear and claim it, &c., it was the duty of the administrator, to put the money at interest, under the sanction of the court, and so employ it for the benefit of the persons entitled to it, until such time as he was legally called upon to pay it over. He had no right to use the money for his own private purposes, and the law gave him no authority to vest it in town lots, or other speculations, for the benefit of the distributees, or for his own use or profit. *Digest, ch. 4, sec.* 141. Any such appropriation was a conversion of it to his own purposes, and rendered him and his securities liable to the distributees for the money, with interest. They would not be bound to receive from him, or resort to, the property bought with the money, though they might do so.

But it is stated in the answer, that Salome B. being doubtful of the propriety of the appropriation by Samuel C. of the $500 held by him as administrator, it was agreed and understood between them, that the lots should be conveyed to her as trustee, to be held by her in *secret trust*, for the benefit of the *heirs* of *Mc-Cormick*. It may be asked, in all fairness, if the parties really, and in good faith, intended to vest the money in the purchase of the lots for the use and benefit of the heirs of McCormick, and not for the private advantage of Samuel C. Wheat, why this purpose should be kept secret? Why was Salome B. to hold the lots in secret trust? Why not make an open transaction of it, and recite in the deed from Gibson to her, that the money was furnished by the administrator, and that the property was conveyed to her in trust for the benefit of the persons, whose money was used in the purchase?

Again, it may be remarked, that the answer shows that, by

the mortgage to Nance, the lots were incumbered with a private debt of $150, due from Samuel C. Wheat to Nance. Moreover, the lots were purchased of Gibson in March, 1849. Some time after this, Samuel C. Wheat, it appears, filed his account for settlement with the Probate Court, as administrator of McCormick, in which he stated that the balance in his hands was *"ready and subject to the order of the court."* No statement was made to the court that the fund had been vested in town lots, which were conveyed to Salome B. Wheat, for the benefit of the heirs.

Taking into consideration all the statements made in the answer, in connection with the fact that Samuel C. Wheat was a judgment debtor of appellees at the time, and that they were seeking satisfaction by executions, and the conclusion follows with a certainty, admitting of no reasonable doubt, that he converted a trust fund to his private purposes, and that the real object, on his part at least, of covering up the property in the name of Salome B. Wheat, was to shield it from execution by his creditors.

Whatever may be the rights of the heirs of McCormick to resort to property, so purchased with money coming to them by their trustee, instead of proceeding upon his bond, they are not before us now—they are not parties to this contest, and we cannot know that they ever will claim to resort to the property. As between appellants and appellees, we think the court below, under all the facts of the case, was warranted in treating the lots as the private property of Samuel C., and subject to the satisfaction of appellees' judgment.

2. Nance was not a necessary party to the bill, though it would have been proper to have made him a defendant, he appearing to be a prior incumbrancer. But not being a party, the decree will not affect any rights he may have, under his mortgage, upon the lots. The objection, however, that he was not made a party, does not come with a good grace from the appellants, as it appears that they objected to his being made a party, after submis-

sion, and finally, consented for the cause to be heard between the original parties.

Upon the whole record, we cannot conclude that any injustice has been done by the decree of the court below, and it is affirmed.