SHIELDS VS. TRAMMELL ET AL.

Chancery Courts have the power to compel the specific performance of contracts in reference to land: but will do so, only where there has been a valuable consideration; and where the contract by both parties can be judicially secured; and where it is really important to the party seeking the performance, without being oppressive to the other party.

A special performance of a contract for the conveyance of land will not be decreed, where the vendor has no title; or has, since the contract, conveyed the land to a stranger without notice.

Where a general replication is put in to an answer in chancery all the allegations in the answer, responsive to the bill, must be taken as true, unless disproved: but any allegation not responsive, but stating matter in avoidance, must be proved.   (Wheat et al. vs. Moss et al., 16 Ark. 243.)

W. sold to S. a tract of land, giving him a bond for title, and putting him in possession—the consideration being paid: W. & S. both died before any conveyance of the land by W.: the heir of S. entered into a parol agreement with T., that the latter should procure the conveyance of the land from the heirs of W., and that he

would give him a specified half of the land: the heirs of W. refused to convey to the heir of S.; but did convey to T. upon the payment of a further consideration: *Held*, That the contract between the heir of S. and T. would be enforced in chancery, upon the performance by T. of his part of the agreement: that the conveyance to T. by the heirs of W. created a resulting trust, which a Court of chancery would carry into effect according to the agreement.

*Appeal from the Circuit Court of Sebastian county in Chancery.*

The Hon. FELIX J. BATSON, Circuit Judge.

CLARK for the appellant.

The complainant in his response, denies any contract or agreement whatever in the premises, he is therefore, as to the pleadings, entitled to the benefit of the statute of frauds. See *Harris vs. Knickerbocker*, 5th *Wend.* 638. *Cozzine vs. Graham*, 2d *Paige*, 177. 1 *Marsh. Ky.* 437, and the defendant must show a valid contract within the statute or such as is not affected by it.

Trammell's purchase and conveyance to Shields not being a compliance with the terms proposed, is therefore not binding on Shields, even as an agreement, and independant of any subsequent stipulations between the parties; this alleged agreement is entirely out of the question. It follows that Trammell purchased in his own wrong, without any authority from Shields, and in violation of his duty as his agent, at Shields' election, therefore (bating the statute of frauds) he was his trustee and held the title in trust for him. See 2d *Story Eq. Jur.* 1211 *a.* *Denton vs. McKinzie*, 1st *Des.* 289. *Sweet vs. Jacobs*, 6 *Paige*, 355. 5 *Watts*, 303.

Or Shields might have treated his title as an nullity, and relied on his own equitable title, *Chitty on Con.* 741, 742.

Independent of the general principle that a party cannot prove what is not alleged; there are abundance of authorities requiring the parties seeking a specific performance to set forth the contract in manner, clear, certain, and definite, in all its terms. See *Parkhurst vs. Van Courtlandt*, 14th *John.* 15; *Board-*

*man vs. Mostyn,* 6*th Ves.* 467, 470; *Phillips vs. Thompson,* 1*st Johns. Ch. Rep.* 149, 150; *Harris vs. Knickerbocker,* 5*th Wend.* 649.

A Court will not execute an agreement without a good and meritorious consideration. See 2*d Story, sec's* 787, 793, *a* 973, 977; *Woodcock vs. Bennett,* 1*st Cow.* 711; *Seymour vs. Delaney,* 6*th Johns. Chy. Rep.* 222; 1*st Ves.* 279; *Colson vs. Thompson,* 2*d Wheat.* 336.

In regard to the statute of frauds, the authorities are unanimous, that in order to take a case out of the statute, upon the grounds of part performance of parol contract, the contract itself must be established by competent proofs to be clear, definite, and unequivocal in all its terms, and the acts of part performance must refer exclusively to the identical agreement, and be such as could be done only with the view or design of its being performed. See 2*d Story's Eq.* 764, 762; 1*st Sug. on Ven. ch.* 3, *sec.* 8, *n.* 1 *to* 29; *Neufville vs. Mitchell,* 1*st Des.* 480; *Phillips vs. Thompson,* 1*st Johns. Chy. Rep.* 141; *Parkhurst vs. Vancourtlandt, Idem.* 273; *Morgan vs. Morgan,* 2*d Wheat.* 302; *Newton vs. Swanzey,* 8*th N. & C. B. p.* 9; *Crocker vs. Higgins,* 7*th Conn.* 343; *Davenport vs. Mason,* 15*th Mass.* 85; 1*st Madd. Ch.* 376, 379; *Pyke vs. Williams,* 3*d Ves.* 381; *Harris vs. Knickerbocker,* 5*th Wend.* 638. *Gregory vs. Meyhill,* 18*th Ves.* 328; *Keatts vs. Rector,* 1 *Ark.* 393.

The only ground on which the Courts interfere in such cases is to prevent the statute itself from being made use of to perpetrate fraud. And when a refusal to execute would be no fraud upon the party seeking, the Court will leave the party to his remedy for damages. 1*st Sug. on Ven. ch.* 4, *sec.* 8, *n.* 2; 1*st Ves.* 221; *Taylor vs. Beach,* 1*st Ves.* 297; 1*st Bro. C. C.* 417; *Billington vs. Walsh,* 5*th Binn.* 127, 131; *Smith vs. Pattensless,* 1 *Serg. & Rawle* 80; *Wetmore vs. White,* 2*d Cain Cas. in Er.,* 87, and cases above cited.

DUVAL & W. WALKER for the appellees.

The testimony established, beyond a doubt, the contract set

up by Trammell—that complainant had agreed to give him one-half of his land as a consideration for procuring a deed from the Womachs.

The agreement between Trammell and defendant resting in parol, is within the Statute of frauds; but we conceive that, in this case, the emphatic ratification of it by the complainant, estopped him from setting up the statute to avoid it.

In *Taylor vs. Patrick*, 1*st Bibb*, 170, the Court say, "that no particular form of proceeding is necessary to operate as a confirmation; it appears to us to be fully sufficient if any act is done which clearly indicates the assent of the mind to stand by and perform the contract which had been previously entered into." His acceptance of the deed—giving directions for the survey, etc., are acts clearly evincing his assent to perform his contract. And taken as a whol ,hey prove incontestibly the existence of the contract, and its subsequent ratification, that an attempt to evade its obligation is madness and folly. They were all positive and palpable acts, having unquestionable reference to the agreement, and clearly to be in execution of it. There is no equivocation or uncertainty in them. *Hatcher et al. vs. Hatcher et al.*, 1 *McMullan's Eq.* 311; *Robertson vs. Robertson*, 9 *Watts*, 32, 42; *Phillips vs. Thompson*, 1 *John. Chancery R.* 131; 1 *Leading Cases in Eq.* 568.

Mr. Justice HANLY delivered the opinion of the Court.

This was a bill brought by the appellant, Shields, to the August term, 1854, of the Sebastian Circuit Court. As far as it is material to state, the substance of the bill is, that some time prior to 1830, the father of Shields bought a tract of land consisting of 320 acres, and situate in Sebastian county, from one Womack, the father of the defendants of that name, and took from him a title bond, in which he obligated himself to make conveyance of the land in question by deed in fee simple as soon as he should acquire a patent for it from the government of the United States: That at the date of the purchase thus made, Womack delivered possession of the land to the senior

Shields, which he retained from that time forward to his death, a few years after: that at the death of the senior Shields, Womack had not made a conveyance of the land in fee to him in accordance with the title bond: that the complainant was the only child and sole heir at law of the elder Shields: that after the death of his father, the patent for the land in question was issued to Womack: that he omitted to make title thereto under his bond: that a short time after the patent was issued, he departed this life, leaving the defendants, Womacks, his sole heirs at law: that they, after the death of their father, refused to execute the agreement made by him in respect to the land in question, notwithstanding they well knew that both the complainant and his father had complied with every condition undertaken on their part, and had fully paid the consideration money for said land.

The bill further states that the Womacks, after the death of their father, had removed to Texas: that they, in utter violation of the terms of the bond made by their father, and to the father of the complainant, and in fraud of the complainant's rights in respect to the land in question, had made a deed for the entire tract of land to the defendant, Trammell, for some trivial or pretended consideration; and that since the date of that deed, Trammell was setting up and claiming title thereunder, was committing waste thereon, and was exercising other acts of ownership in respect thereto.

The bill further charges that complainant has been in actual, peaceable, continuous and uninterrupted possession for the 20 years next before the commencement of this suit: that independent of this, the title bond, from the elder Womack to his father, for the tract of land in question, had been regularly and duly acknowledged and recorded in Sebastian county, which he exhibited with his bill, and that defendant, Trammell, had actual notice of all these matters.

The bill prayed that the deed from the defendants, Womack, to Trammell, should be declared fraudulent and void as to the complainant: that Trammell should take and derive no title

thereunder; that complainant should be quieted in his posses-
sion of the land, and that Trammell should be perpetually en-
joined from committing waste thereon, and exercising acts of
ownership in respect to the tract of land in question, and that
the Womacks should be decreed to specifically perform the con-
tract of their father, made with the father of complainant, and
for general relief against all the defendants, etc.

The defendant Trammell, answered, admitting the contract
set out in the bill as having been made by the elder Womack,
with the complainant's father, in respect to the land in question;
admitted that it had been patented by the United States; that
the full consideration had been paid by the elder Shields to the
elder Womack; that no conveyance had been made by Womack
in his life time, to complainant's father; that the defendants,
Womack, had not executed the contract since the death of their
father; and by way of discovery and defence to the bill, and not
for relief, charged in his answer the following facts: that the
complainant represented to him, that he had been advised by
counsel that it was probable, from some cause, he could not ob-
tain a decree for specific performance of the agreement to con-
vey, made by the elder Womack to his father; that he was
anxious to obtain title in fee to the land in question, and pro-
posed to him, Trammell, that if he would go to Texas, where
it was understood the Womacks lived, and obtain an executed
conveyance in fee to the entire 320 acre tract, consisting of two
adjoining quarter sections—one being situate in the bottom of
the Arkansas river, and the other on the table or high lands—
that he would give him the one in the bottom, exclusive of about
40 acres, which included his fields or plantation; that to make
up the quantity of acres, he would give to him 40 acres from the
tract situate on the high lands, reserved for himself.

The answer further charged that he, Trammell, acceded to
this proposition, and consented to start at once to Texas, to ac-
complish it; that he did go to Texas, and applied to the Wo-
macks to make conveyance of the whole tract to complainant,
Shields, under the contract of their father; that they declined

doing so, but offered to do so and make a conveyance of the entire tract of land to him, Trammell, if he would pay them the sum of ———— hundred dollars, which he charges he paid, and took a conveyance to himself of the whole tract; that in doing this, it was his purpose to carry out the arrangement made with the complainant, and was the best that he could do; that the deed from the Womacks to him was duly acknowledged, and on his arrival at home in Sebastian county, was filed for record and recorded, which he exhibited with his answer.

The answer further charged that on his arrival at home, he acquainted the complainant with what he had done in respect to the land, and that he expressed himself satisfied; that he proposed to complainant to proceed at once to have the land divided in pursuance of the agreement; that he assented to this also; that in pursuance thereof he, at once, applied to the county surveyor to run the lines and divide the lands in conformity to the agreement; that the surveyor declined doing so, at the time, on account of pressing engagements; that fearing lest some calamity might befall him, and the agreement between himself and complainant not be executed in consequence thereof, he caused a deed to be made out and executed by himself and his wife, conveying to complainant one undivided half of the land in question, which he caused to be duly acknowledged with the dower right of his wife relinquished, and properly certified: that this deed was tendered to complainant, and accepted by him; that it was not his purpose that this deed should avoid, or prevent him from complying with the true intent and meaning of his contract made with Shields, but was intended only for safety, and to continue until the land could be divided by the surveyor in conformity to the agreement, when it was his purpose to give other assurance of title to the particular land, which should be allotted thereunder, by metes and bounds: that after the execution and delivery of this deed, he called on complainant to accompany him and the surveyor to make the survey and partition; that he declined doing so, on account of engagements, but sent a neighbor in his place; that the survey was made, and plats

4

and field notes were furnished by the surveyor; that complainant, with a knowledge of the facts, expressed himself satisfied and pleased therewith.

The answer admits that the defendant, Trammell, took possession of the land allotted to him, exercised acts of ownership over it, and was cutting and felling timber thereon, when suit was commenced; denies all fraud, etc.

Complainant, Shields, filed a response to the new facts set up in the answer of Trammell, by way of defence to the bill of complaint, in which he virtually denies and contradicts them. Complainant filed a general replication, in due form, to Trammell's answer, beside the response just noticed, etc.

On this state of pleading the cause was set down for hearing upon the original bill, the answer of Trammell, the special response thereto, and Shields' general replication, exhibits and proof, and the hearing set for the next term succeeding the one at which the pleadings were made up. At the term at which the cause was set for hearing, much proof was submitted by both parties, which we will not pretend to give, either in substance or detail, but will content ourselves with stating what we consider its results.

The weight of the testimony was decidedly in favor of the defendant, Trammell, and sustained the defence set up in his answer to the relief prayed in the bill, in all its essential particulars.

The defendants, Womack, made no appearance.

The chancellor, at the hearing, upon the pleading and evidence, as we have stated them, dismissed complainant's bill, dissolved the injunction awarded against Trammell, and decreed costs against complainant. From this decree Shields appealed to this Court, and insists here that it must be reversed.

Extended briefs have been presented on both sides. We do not propose, however, to follow the counsel through their arguments; but will content ourselves with stating a few principles of law which, we think, are decisive of the case at bar.

The design of the bill, as against the defendants, Womack,

was, evidently, to enforce a specific performance of the contract made by their ancestor with the father of complainant in respect to the land in question; and as against Trammell, it was to remove the cloud from complainant's title caused by the deed made by the Womacks to Trammell, and to prevent future encroachments upon the premises under any pretence whatsoever. The question arises, under the facts and pleadings in the cause, whether the complainant, Shields, was entitled to any relief, as against either of the defendants, and if so, what, and upon what grounds?

The jurisdiction of Courts of chancery to compel the specific performance of contracts in reference to land, has been so firmly established, that it may be regarded, now, as one of the main or prominent subjects of equitable cognizance or jurisdiction.

The specific performance of a contract is not, however, a matter of course, but rests in the sound discretion of the Court, and it may be refused when circumstances render it inequitable or improper.    See *Rogers vs. Saunders*, 16 *Maine Rep.* 92; *Griffith vs. Frederick county Bank*, 6 *Gill & J.* 424; *Pigg vs. Cordor*, 12 *Liegh Rep.* 69, 76; *Meeker vs. Meeker et al.*, 16 *Conn. Rep.* 403; *Seymour vs. Delancy*, 3 *Cow. Rep.* 445; *Anthony vs. Leftwick*, 3 *Rand. Rep.* 238; *Prater vs. Miller*, 3 *Hawk. Rep.* 629; *Turner vs. Clay*, 3 *Bibb Rep.* 52; *Frisby vs. Ballance*, 4 *Scam. Rep.* 287; *McMortin vs. Bennett, Harr. Ch. Rep.* 124; 2 *Blackf. Rep.* 273; *Leigh vs. Crump*, 1 *Ire. Ch. Rep.* 299; *Gould vs. Womack*, 2 *Ala. Rep.* 83; *Wynn vs. Garland*, *decided at the present term*.

It is said, however, that this discretion is not an arbitrary one, but is to be exercised according to the circumstances of each particular case.   See *Adam's Eq.*, *Note* 1, *p.* 244, citing *Bennett vs. Smith*, 16. *Jurist* 421.

Courts of chancery, in the exercise of the jurisdiction of enforcing the specific performance of contracts, in respect to lands, have adopted and prescribed certain rules by which they are usually governed, which we will proceed to state as follows:

1. There must be a valuable consideration either in the way of a benefit bestowed, or disadvantage sustained by the party

in whose favor a contract is to be enforced. See *Minturn vs. Seymour*, 4 *John. Ch. Rep.* 500; *Woodcock vs. Bennett*, 1 *Cow. Rep.* 733; *Cabeen vs. Gordon, Hill Ch. Rep.* 51; *Adams Eq.* 245.

2. That the mutual enforcement of the contract in specie is practicable, *i. e.* that the contract be one which the defendant can fulfill; and the fulfillment of which, on his part, and also on the part of the plaintiff, can be judicially secured. *Adam's Eq.* 249, 250.

3. That an enforcement *in specie* be necessary, *i. e.*, it must be really important to the plaintiff, and not oppressive on the defendant. *Adams' Eq.* 253.

Keeping in view, then, the foregoing principles, let us recur to the facts of this case, and determine whether the complainant has shown himself entitled to so much of the relief prayed for as required the Court below to carry into execution the contract made by the ancestor of the defendants, Womack, with the father of the complainant, Shields.

As between the defendants, Womack, and Shields, throwing out of view the equities in favor of Trammell, there can be no doubt, we think, but that Shields would be entitled to a specific performance of the contract to convey, made by the elder Womack with the elder Shields. But as the facts are, a specific performance on the part of the Womacks, would be a vain and imperfect act, which a Court of equity will not, knowingly, loan itself to do. See *Toby vs. The county of Bristol*, 3 *Story's Rep.* 800.

We have said, to decree a specific performance of the contract set out in complainant's bill, under the facts of this case, would be a vain and imperfect act: *Vain*, because no title would or could be communicated to the complainant, for the reason that it appears the defendants, Womack, have already divested themselves, for a fair valuable consideration, by deed duly executed, of all the right, title and interest, which they may have had in the land in question: *Imperfect*, for the reason that a decree for a specific performance on the part of the Womacks, in favor of the complainant, would not conduce to the settlement or adjust-

ment of the equities existing between the complainant and Trammell.

It is said that a specific performance of a contract for the conveyance of land will not be decreed where the vendor has no title, as it would decree the performance of an unlawful act. (See *Fitzpatrick vs. Featherston*, 3 *Ala. Rep.* 40:) nor where, being the absolute owner at the time of his contract he subsequently conveys to a stranger, who is ignorant of the prior sale, and is therefore bound by no equity to give it effect. In this last case the vendor's misconduct may be a ground for charging him with costs, but a decree for performance of the contract is absolutely impossible, and there is no jurisdiction in equity to give damages for the breach. See *Todd vs. Gee*, 17 *Ves. Rep.* 273; *Jenkins vs. Penkinson*, 2 *M. & K.* 5; *Sainsbury vs. Jones*, 2 *Bea. Rep.* 462; *Nelson vs. Bridges, Ib.* 239.

In the case before us, it appears that Trammell had full notice of the existence of the contract to convey, made by Womack to Shields; and therefore, if there were not other equities existing between the complainant and the defendant, Trammell, the Court might hold the conveyance from the Womacks to Trammell, to enure to the benefit of Shields, and decree a conveyance from Trammell to him. But considering the facts before us, it is manifest that though the Womacks may have acted in bad faith in refusing to convey to Shields, when applied to by Trammell for that purpose, yet there can be no doubt but that Trammell was fully authorized by Shields to procure a conveyance of their interest even to himself. The fact is, we are authorized to say, the conveyance by the Womacks to Trammell was warranted by the agreement between Shields and Trammell before his departure for Texas, in quest of the Womacks. It is true that, in consequence of the relations created between Shields and Trammell by their agreement, a conveyance to Trammell created a resulting trust in him in favor of Shields in respect to the land. The conditions of the trust, which resulted between them, are declared and stated in their agreement, *i. e.*, that Shields was to have the quarter section lying upon the uplands,

except 40 acres which he was to have out of the other quarter, so as to include his fields and improvements, and that Trammell was to have the quarter in the river bottom, except the 40 acres to be taken by Shields, and in lieu of that he was to have the same quantity out of the upland quarter; so that each should have 160 acres of the 320. A Court of chancery would execute this trust if applied to by the parties. If the deed had been made by the Womacks to Shields, instead of by them to Trammell, the Court would have decreed the execution of the trust, which would have resulted under the circumstancs in favor of Trammell, and so *vice versa*. See *Cook vs. Bronaugh et al.*, 13 *Ark*. 187; *McGuire et al. vs. Ramscy*. 4 *Eng*. 527.

We have been considering this case in respect to the relief prayed for against the Womacks. We will now consider it in reference to Trammell.

We have before said that Trammell does not attempt to make his answer a cross bill, except for discovery, and by way of defence. No relief is asked for. If the answer of Trammell had been made a cross bill under our practice, with a general prayer for relief, the result of the cause, both as to him and the complainant, might have been different, for under a prayer for general relief, a Court of chancery may grant any that the facts stated will warrant, although it be inconsistent with the special relief prayed. See *Story's Eq. Plea.* 40, 41, 42; *Cook vs. Bro. naugh*, 13 *Ark. Rcp.* 183; *Kelly's Hrs. et al. vs. McGuire, wife et al.*, 15 *Ark.* 593. As it is, we can only treat the new matter in the answer of Trammell as means of defence. Viewing it, then, in that aspect, and also in view of the fact that the complainant interposed both a general and special replication thereto, we take occasion to repeat the rule laid down on the subject in *Wheat et al. vs. Moss et al*, (16 *Ark.* 243,) *i. e.*, that where a general replication is put in to an answer in chancery, it is a general rule that all the allegations, which are responsive to the bill, shall be taken as true, unless disproved by two witnesses, or by one witness with pregnant circumstances; and also, that every

allegation not directly responsive to the bill, but stating matter in avoidance, or in bar of the complainant's claim, must, under the circumstances, be fully proved, or it will have no effect.

Testing the case at bar, as far as it pertains to the answer of Trammell, by the general rule above laid down, there is but little difficulty in arriving at a correct result on the subject. In recurring again to the bill and answer, it is manifest what facts in the answer are responsive to the bill, and what are set up in avoidance. The burden of disproving the former class, as we have already seen, devolves on the complainant, whilst the duty of establishing the latter, is cast on the defendant· On this part of the subject it is said there are many nice distinctions, and we sometimes fall in, and meet in the reports with, cases that it is difficult to reconcile, one with another. But, as we have before said, in the case before us, the facts in the answer responsive to the bill, are those that are set up in avoidance, and so marked that we need merely mention them, to show the distinction. We regard, therefore, all that part of Trammell's answer, which sets up the contract between himself and Shields in respect to the purchase of the lands in question from the Womacks—the manner in which it should be divided between them when purchased—the fact of the purchase by the defendant—the recognition thereof by the complainant after the defendant's return from Texas—the making of the deed by the defendant and his wife to the complainant for one undivided half of the land—its acceptance by him—the facts in reference to the survey and division of the land by the county surveyor—the acquiescence in this by the complainant, etc., are all facts and matters set up by the defendant in avoidance; and consequently, are such facts as the defendant was required to prove in some one of the modes required by law. The other parts of his answer, we regard as being strictly responsive to the bill, and consequently imposed on the complainant the duty of overturning the proof or evidence which they import in behalf of the defendant, in accordance with the rule we have above stated.

Let us consider and determine, therefore, whether the defend-

ant, Trammell, has established such parts of his answer, as we have said it was his duty to have done. On this subject we think there can be no doubt. More than two witnesses testified to, and sustained each substantive fact set out in defendant's answer. If the matter relied on in the answer by way of avoidance of the relief asked for by the bill, amounts to an avoidance under the law in such case, it having been established by the proof, as we have said, it follows that the decree of the Court below is correct, and must be affirmed by this Court.

The matter set up by way of avoidance amounts to this: That the contract of the complainant and defendant, in respect to procuring a title to the land in question from the heirs of Womack, though a parol contract affecting lands, and consequently void, under the statute of frauds, unless taken out of its operation by some superior equity arising in one of the modes recognized by the law, was founded on a valuable consideration on the part of Trammell, in the way of actual service rendered, and money expended in its performance on his part, or, in other words, that this parol contract was substantially performed on the part of Trammell, and was fully executed at the time this suit was brought as far as it was possible for him to have done so under the circumstances shown. The question is, do these facts clothe the defendant with equities in respect to the subject matter of this suit, sufficiently to avoid the equities set up in the bill? We think there cannot be a doubt on the subject. The statute of frauds would be an encouragement of frauds, instead of a preventive of them, if such facts would not take a party out of its operation. It has been too long the settled doctrine of this Court, as well as of most of the American Courts, to decree a specific performance under the circumstances existing in this case; but such decree can only be rendered in behalf of the party who has performed his part of the contract. The doctrine on the point is called the doctrine of part performance, and its principle appears to be that if one of the contracting parties induce the other so to act, that if the contract be abandoned, he cannot be restored to his former position, the contract must be

considered as perfected in equity, and a refusal to complete it at law is in the nature of a fraud.  See *Adam's Eq.* 263, 264, 265, *and the authorities, American, collected in note* 1 *p.* 263; also *Wynn vs Garland, before cited.*

We regret that the parties to this suit had not framed their pleadings so as to enable us to decree in such a manner as to avoid, at any future time, the necessity of any farther litigation in respect to the subject matter of this suit.   As it is, our action is circumscribed by the rule that we have laid down on the subject, and we must therefore leave the parties to their rights and remedies, as they may conceive and elect them hereafter, if they should conceive any other  proceeding necessary, which we do not design, at all, as intimating or suggesting.

Having considered  all the  points  which  we conceive legitimately arise in this case, and finding  no error  in the decree of the Court below rendered in this behalf, the same is in all things affirmed.