## LUM WAI, ET AL, *v.* HONG HOON, ET AL.

### No. 1143.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.
HON. C. W. ASHFORD, JUDGE.

ARGUED MARCH 6, 1919.                    DECIDED MARCH 22, 1919.

COKE, C. J., EDINGS, J., AND CIRCUIT JUDGE DEBOLT
IN PLACE OF KEMP, J., ABSENT.

SPECIFIC PERFORMANCE—*contract for sale of chattel articles.*

> Equity will not in general decree the specific performance of contracts concerning chattels because their money value recovered as damages will enable the party to purchase others in the market of like kind and quality.

SAME—*same.*

> Where, however, particular chattels have some special value to the owner, above any pecuniary estimate, and where they are unique, rare and incapable of being reproduced by money damages equity will decree a specific delivery of them to their owner and the specific performance of contracts concerning them.

SAME—*same.*

> And where the chattels are such that they are not obtainable in the market or can only be obtained at great expense and inconvenience and failure to obtain them causes a loss which could not be adequately compensated in an action at law a court of equity will decree specific performance.

Opinion of the Court.

EQUITY—*jurisdiction—multiplicity of suits.*

The mere fact that there exists divers causes of action which may be the foundation of as many different suits between the parties is in itself not sufficient ground to confer jurisdiction upon a court of equity.

SAME—*same—same.*

In the case at bar the complainants might at their own option bring successive suits against respondents as the breaches of the contract occur or they might remain quiescent until the expiration of the contract and then bring one action at law for the recovery of the entire damages sustained by them. This being a matter entirely within their own control the reason for the interference of a court of equity fails.

SAME—*mutuality of remedy.*

A contract to be enforcible in equity must be mutual but when payment under the contract is to be made in money mutuality of remedy is not the test for the right to the remedy. The mutuality required is that which is necessary for creating a contract enforcible on both sides in some manner but not necessarily enforcible on both sides by specific performance.

SAME—*same.*

The present contract is bilateral and not unilateral. It contains mutual executory provisions, that is to say, both parties have bound themselves by reciprocal obligations and this it would seem meets the modern rule of mutuality.

### OPINION OF THE COURT BY COKE, C. J.

The complainants-appellees are a copartnership doing business as the See Wo Poi Shop Company. The respondents-appellants are also a copartnership doing business as the See Hop Sen Company. The complainants in October, 1918, filed in the circuit court of the first judicial circuit their bill in equity for specific performance, injunction, etc. Summarizing the allegations of the bill it is alleged that the respondents are engaged in planting and raising taro on certain land at Kahana on the Island of Oahu and that on November 8, 1917, they contracted in writing with a certain firm called See Wo Chan Company, said contract being an agreement where-

by respondents agreed to sell and the See Wo Chan Company agreed to buy all the marketable taro to be grown by the seller at Kahana. The contract is attached to and made a part of the bill. The provisions which are pertinent to this controversy are as follows:

"The seller agrees to sell and the buyer agrees to buy all the marketable taro to be grown by the seller at Kahana, Oahu; the seller to gather, trim and bag all taro raised by them and to ship same to the buyer at Honolulu; the seller to ship and way-bill the same and prepay freight to Kahuku and the buyer to pay the freight from Kahuku to Honolulu; all taro so shipped to be of marketable size and free, clear and sound. All taro is to mean the entire crop or crops grown by the seller within the term of this agreement and that are fit for sale or manufacturing into poi.

"This contract is to be and remain in full force and effect for the term of two (2) years from and after the date hereof and within that period the seller shall deliver not less than 10,000 bags of taro and as much more as is grown by said seller and the buyer will take all of the 10,000 bags of taro and as much more as the seller shall grow and ship in accordance with the terms as aforesaid.

"The price to be paid for the taro to be grown and shipped as aforesaid is at the rate of $1.20 (one dollar and twenty cents) per (100) one hundred net pounds of taro. The buyer agrees to pay for the same or make full settlement at least once each month for all taro shipped, delivered and accepted.

"Shipments are to be made in as equal and regular a manner as possible and there shall be no hold-ups or delay by the shipper and the buyer shall receive and accept the same in accordance with this agreement."

The bill further alleges that on March 24, 1918, the See Wo Chan Company with the consent of respondents assigned said contract to the complainants; that the complainants fully observed and performed the contract on their part but the respondents have since the 4th day of

May, 1918, refused to perform the same and although having in their possession large quantities of marketable taro grown on said land have refused to sell or deliver to complainants any taro, selling and disposing of the same, and now continuing so to do, to other persons; that at the time of the assignment of said contract to them complainants had numerous customers for the purchase of taro and of the poi manufactured therefrom and had entered into valuable and profitable contracts with a number of said customers; that the present condition of the taro market in the City and County of Honolulu is such that complainants cannot profitably purchase taro in lieu of that ·to which they were entitled from the respondents and that if complainants fail to procure delivery of said taro they will be unable to make full delivery to their customers, which will injuriously affect their business resulting in the loss of trade and causing irreparable injury and loss of trade incapable of being determined at law or of being estimated or compensated in money; that if respondents continue to make delivery to others complainants will be compelled to bring innumerable suits to prevent such deliveries; that by reason of the foregoing complainants are without adequate remedy at law.

The respondents interposed a demurrer to the bill of complaint which contained the following grounds: (1) That the bill of complaint does not state facts sufficient to constitute a cause of action against respondents; (2) that said bill of complaint does not set forth facts entitling said complainants to specific performance of the contract declared on or to an injunction or to an accounting suit in equity; (3) that equity is without jurisdiction to entertain said suit or to award the relief prayed for by said bill or any relief; (4) that it affirmatively appears from the allegations of said bill of complaint that complainants are not without an adequate remedy at law, but

that if said complainants have a cause of action against said respondents, a suit for damages at law for alleged breach of contract is the proper and an adequate remedy for said complainants. The fifth ground of demurrer we consider as not bearing upon the issues herein and therefore omit the same.

The trial court overruled the demurrer but allowed respondents an interlocutory appeal upon which the cause is now presented to this court.

The question which overshadows all others involved in this controversy is to be found in the claim of the respondents that the contract is for the delivery of an ordinary commercial commodity, damages for nondelivery of which can be easily and certainly ascertained and readily recovered in a court of law. In other words, we are confronted with this question—have the complainants come to the right court to obtain that which the law will undoubtedly give them, namely, compensation for the loss they have sustained by reason of the breach of the contract? Unless there are peculiar attending circumstances and conditions the remedy at law is adequate in a case of contract to sell chattel articles exclusively where such articles are to be obtained in the market. The adopted rule is: "Equity will not in general decree the specific performance of contracts concerning chattels, because their money value recovered as damages will enable the party to purchase others in the market of like kind and quality. Where, however, particular chattels have some special value to the owner over and above any pecuniary estimate,—the *pretium affectionis*—and where they are unique, rare and incapable of being reproduced by money damages equity will decree a specific delivery of them to their owner and the specific performance of contracts concerning them." 6 Pomeroy Eq. Jur. 3 ed., §748; 22 Cyc. 847, 848: *St. Regis Paper Co.* v. *Santa*

*Clara Lumber Co.,* 67 N. Y. S. 149; *Fothergill* v. *Row-land,* L. R. 17 Eq. 132. And it is also held that where the chattels are such that they are not obtainable in the market or can only be obtained at great expense and inconvenience and a failure to obtain them causes a loss which could not be adequately compensated in an action at law a court of equity will decree specific performance. *Texas Co.* v. *Central Fuel Oil Co.,* 194 Fed. 1, 13. In *Equitable Gas Light Co.* v. *Baltimore Coal Tar & Mfg. Co.,* 63 Md. 285, specific performance was decreed on a contract to sell coal tar which plaintiff needed in order to fill existing contracts and which it was impossible to obtain otherwise than by purchasing in distant cities and transporting the same at great expense. In *Gloucester Isinglass & Glue Co.* v. *Russia Cement Co.,* 154 Mass. 92, specific performance was decreed on a contract to furnish fish skins to be used in the manufacture of glue. It appeared that fish skins were of very limited production; that most of the producers were under contract and that unless relief was given by specific performance it would be very difficult if not impossible for the complainant to carry on his business.

We do not think that the complainants by the allegations in their bill have brought themselves within the exception to the general rule. The complainants allege that they have entered into valuable and profitable contracts with certain customers; that the present condition of the taro market in the City and County of Honolulu is such that complainants cannot profitably purchase taro in lieu of that to which they are entitled under the contract; that in the event of failure to procure delivery of this taro complainants will be unable to make full delivery to their customers and will be unable to meet the demands of their customers for taro and poi and such failure will injuriously affect complainants' business, trade and credit.

Complainants nowhere allege that there is not an abundance of taro in the local market ready at hand and easily obtainable by them.  It is obvious that if the taro required by the complainants can be obtained in the market in Honolulu, although perhaps at a price in advance of that named in their contract with respondents, the complainants will be able to make full delivery of taro and poi to their customers and their business, trade and credit will remain unimpaired.  In that event the complainants could maintain an action at law for damages against respondents for breach of contract and of course the measure of damages could be readily ascertained, hence the injury would not be irreparable.  See 22 Cyc. 763, 764.  It is nowhere alleged that the respondents are insolvent or that a judgment against them could not be collected.

But, argue complainants, in order to recover in damages at law it would be necessary for them to resort to a multiplicity of suits; that complainants might bring suits monthly to recover damages for the loss of profits for the month but they could not recover in any one suit before the expiration of the term of the contract all of the damages because it would be impossible to ascertain and show what the damages would amount to in any one suit and they are not required to wait after a breach of contract has occurred; that unless one action can be brought in which adequate relief can be obtained equity will always take jurisdiction.  If this were a correct statement of the rule equity would entertain jurisdiction and enforce the collection of money payable in installments under a contract.  "We do not understand the mere fact that there exists divers causes of action, which may be the foundation of as many different suits between the parties thereto, is a ground upon which equity may be called upon to assume jurisdiction and settle all such

matters in one suit. The case would not be different if some of the causes of action were not mature. We have never heard it claimed that equity will entertain an action upon a contract requiring the payment of money daily, monthly or yearly. Yet in such a case an action would accrue at each of such periods and there would thus be, prospectively, a great multiplicity of actions. In the case before us, admitting the contract to be divisible, and that an action may be maintained upon every breach, this is no ground for interference by a court of chancery." *Richmond* v. *Dubuque R. R. Co.,* 33 Ia. 422, 488. And again, "It is urged that the complainants would be put to numerous suits at law and hence the bill has equity upon the doctrine of the prevention of a multiplicity of suits. It cannot be denied but that the complainants might in one action at law sue to recover all of the overcharges paid in the entire cotton season. One suit or a multiplicity of suits, therefore, would be a matter of complainants' own election. There being no necessity for a multiplicity of suits the reason for the interference of a court of equity on the principle mentioned fails." *The Gulf Compress Co.* v. *Harris, Cortner & Co.,* 48 So. 477, 480. And so in this case the complainants might at their own election bring successive suits against respondents as breaches of the contract occur or they might remain quiescent until the expiration of the contract in November of the present year and bring one action at law for the recovery of the entire damages sustained by them. This would be a matter entirely within their own control, hence, as said in the case last above quoted, the reason for the interference of a court of equity on the principle mentioned fails. See also 10 R. C. L. 281.

For these reasons the bill of complaint fails to show that the complainants have not a plain, adequate and complete remedy at law and the demurrer of the re-

spondents should have been sustained upon those grounds.

We are finally brought to the consideration of the difficult and controverted rule of mutuality, a subject which has not heretofore, we believe, had the attention of the courts of Hawaii. The respondents argue that specific performance will not be decreed nor an injunction issued to restrain the breach of the contract because of the lack of mutuality of equitable remedy, for the reason (a) complainants could not procure specific performance of respondents' contract to raise, sell and deliver the taro in question as this would involve too burdensome a supervision by the court, and (b) a negative injunction restraining a breach of the contract by the respondents cannot issue herein because no mutuality of remedy exists. The equity rule of mutuality is a subject upon which there is much diversity of opinion. Mr. Pomeroy, in his valuable work on Equity Jurisprudence, seems to favor the rule which requires that the contract must be mutually enforcible in equity, in other words, that equity will not require a respondent to perform his covenant unless complainant by a like proceeding might be compelled to perform his. Yet Mr. Pomeroy says that this doctrine is open to so many exceptions that it is of little value as a rule; and in *Peterson* v. *Chase*, 91 N. W. 687, it is said that the exceptions to the rule are so numerous and so important that the decided cases establishing them now constitute an almost equal volume of authority. It seems to us that if the rule announced by Pomeroy should have literal application the effect would be to remove from the scope of equity jurisdiction a large class of cases calling for the redress of wrongs where adequate remedies are not to be had in courts of law. In some jurisdictions the rule appears to be entirely ignored, while in a large number of jurisdictions it is adopted as follows: "Equity enforces specific performance when there

is no adequate remedy at law. This is the ground of this branch of equity jurisdiction and it is not consistent with the test of mutuality of remedy. When payment is to be made in money mutuality of remedy is not the test for the right to this remedy \* \* \* but the remedy of specific performance need not be mutual. The mutuality required is that which is necessary for creating a contract enforcible on both sides in some manner, but not necessarily enforcible on both sides by specific performance." *Eckstein* v. *Downing*, 64 N. H. 248. See *Shields* v. *Trammell*, 19 Ark. 51; *Ewins* v. *Gordon*, 49 N. H. 444; *Phil. Ball Club* v. *Lajoie*, 202 Pa. St. 210; *Dietrichsen* v. *Cabburn*, 22 Eng. Ch. 51; *Green* v. *Richards*, 23 N. J. E. 32.

This seems to be a concrete statement of the better rule, for, as said in *Frank* v. *Stratford-Handcock*, 77 Pac. 134, the doctrine seems still to be maintained but in modern equity practice it has become very much narrowed in its application by the recognition of a number of so-called exceptions, though the exceptions are so thoroughly established that it would seem more accurate to consider them a part of or a modification of the doctrine itself. The present contract is bilateral, not unilateral. It contains mutual executory provisions, that is to say, both parties have bound themselves by reciprocal obligations, and this it would seem meets the modern rule of mutuality.

Because the courts of law in the case before us will render adequate relief by awarding damages which will fully compensate the complainants for any injury which they may sustain resulting from respondents' failure to perform the contract the order of the circuit court overruling respondents' demurrer is reversed and the cause is remanded with instructions to sustain the demurrer.

*W. L. Stanley* (*W. T. Rawlins* with him on the brief) for complainants.

*W. B. Lymer* (*J. J. Banks* with him on the brief) for respondents.