OF THE STATE OF ARKANSAS     **113**

TERM, 1856.]   Ross et al. as Exrs. vs. Davis.    Davis vs. Ross et al. Exrs.

## Ross et al. as Exrs. vs. Davis.

## Davis vs. Ross et al. as Exrs.

To render the title of a legatee to a specific legacy, complete and perfect, previous to the time allowed for the settlement of the estate of the testator, the assent of the executor is indispensably necessary. (*Refeld et al. Exrs. vs. Bellette et al.*, 14 *Ark.* 15 ; *Carter et al. vs. Cantrell*, 16 *Ark.*)

If the executor voluntarily assents to a legacy, he cannot, afterwards, retract or withdraw such assent, nor can he, *generally*, pursue the property in the hands of the legatee, even though there may be a deficiency of assets to liquidate the outstanding liabilities of the estate.

Where an executor has delivered to the legatee, a specific legacy, within the period of distribution prescribed by the statute, and taken a refunding bond (*Digest, chap.* 4, *secs.* 130, 131) his remedy, upon ascertaining that there is a deficiency of assets to pay debts, is at law upon the bond, or he may proceed, *generally*, in chancery to compel the legatee to refund.

In such case the extent of the right of recovery by the executor, is the value of the specific legacy—where it consists of property—at the time of delivery, with interest thereon: and not—as where the legacy is of a slave—of the increased value and the hire.

It is a rule of chancery practice, that where there is a prayer for specific relief and also for general relief, and the state of the case, as presented by the bill, is not sustained by the evidence, or the court, upon principles of equity, denies the special relief, to grant the complainant, under his general prayer, any relief warranted by the facts set up in his bill, provided the defendant be not surprised on account of such facts not being put in evidence. (*Cook vs. Bronaugh et al.*, 13 *Ark.* 188.)

*Cross Appeals from the Clark Circuit Court in Chancery.*

Hon. Thomas Hubbard, Circuit Judge.

Flanagin, for Ross et al.

Cummins, for Davis.

Mr. Justice Hanly delivered the opinion of the Court.

On the 7th day of February, 1854, Ross et al. filed their ori-

114        CASES IN THE SUPREME COURT

Ross et al. as Exrs. vs. Davis.   Davis vs. Ross et al. as Exrs.   [JANUARY

ginal bill on the chancery side of the Clark Circuit Court, against
Henry Davis, his wife, Mary T. Davis, and William Davis, char-
ging in substance therein, that, on the 9th January, 1848, their
testator, Wiley Newberry, made and published his will, in which
they are appointed the executors thereof: that a short time there-
after the testator departed this life : that said will was proven up
according to law, and is duly recorded in said county ; that they
applied for letters testamentary, which were granted them,
and that they were then proceeding to execute said will, and ad-
minister the estate thereunder ; that, by the said will, their tes-
tator bequeathed a certain negro slave named Lucy, to the de-
fendant William, in trust for the defendant Mary T. and her chil-
dren ; that by the same will, their testator specifically devised
two houses and lots in the town of Arkadelphia, in said county of
Clark, to the corporate authorities of said town for the use there-
of ; that for some time after the decease of their testator, they
supposed his estate solvent, independent of, and beyond said
slave, and said houses and lots ; that, within this time, the de-
fendant William, applied to them for the negro Lucy, bequeathed
to him in trust for the said defendant Mary T. and her children ;
that they, supposing said estate solvent, delivered the said slave
to the said William, on or about the 1st March, 1848 ; that since
then they have ascertained said estate to be insolvent; that the
houses and lots devised to the corporate authorities of the town
of Arkadelphia, have been sold, to pay debts, under an order of
the Probate Court of said county, for the sum of $2.175 05 ; that
notwithstanding this sum has been added to the assets already
in hand, there is a large deficit of assets to pay the debts of said
estate ; that, at the July term, 1851, of the Probate Court of said
county, they made a settlement, in which they were charged
with assets amounting to $3.666 00, including the sum of $400,
being the appraised value of the negro Lucy, delivered to the
defendant William, under the will as aforesaid, as well as the
amount for which the houses and lots sold ; that allowances had
been made against said estate to the amount of $5.300 00, which

they aver was outstanding against the estate at the time of filing their bill, showing, as they aver, a deficiency of assets to pay the debts allowed against said estate of $2000, independent of the bad debts due said estate, which they aver are included in the estimate of assets.   It is charged in said bill, that the slave Lucy was-worth $800, and that her hire per annum was worth $100; that she has been in the possession of one or the other of the defendants, since the 1st March, 1848.  The prayer of the bill is, that, the slave Lucy may be restored to complainants, and be made subject to the payment of the debts of the estate, and for general relief, &c.   The will and the letters testamentary granted to the complainants, are exhibited with the bill in due form.

At the hearing, the bill was dismissed as to the defendants William and Mary T., and retained as to the other defendant for the decree rendered.

The defendant, Henry Davis, answered, and admitted the delivery of the slave Lucy at the time charged, 1st March, 1848, and likewise his possession of her from that time to the filing of his answer : charges that the slave Lucy was sorely diseased at the time she came to his possession, and was worth nothing in the way of hire for two years afterwards: charges that he paid out for medical aid on account of said slave, $150; denies that she was worth over $500, and her hire for the four years preceding not more than $40 per annum ; denies knowledge of the settlement with the Probate Court charged in the bill.   Demurs to the whole bill for want of equity, and reserves, his demurrer for the hearing ; and charges that, when he received the slave Lucy from the complainants, they required of him, and he gave them, a bond of indemnity with security, *to save them harmless*, on account of the delivery of said slave to him.

Complainants filed their replication to the answer of the defendant, and the cause being thus at issue, it was set down for hearing, on the bill, answer, replication, exhibits and proof, which was in substance, as follows :

*Hardy*, a witness for the complainants, testified that, in the years

1847, and 1848, the slave Lucy was worth $700, and her hire per annum $100.

*Kirby*, a medical witness for the defendant, testified that the slave Lucy, at the time she came to the possession of defendant, was much diseased : possibly, incurably so ; that from his knowledge of her condition, he thought she was not worth more than half as much as she would have been if sound ; and so as to her hire.

It appears that the parties admitted as evidence, that the complainants had only assets in hand to the value of $2.372 28, and that the liabilities of the estate amounted to the sum of $4.509 65. It was furthermore admitted, that defendant had paid medical bills on account of said slave to the amount of $40, and that there was a bond of indemnity given by the defendant to the complainants, at the time said slave was delivered up in the manner charged in defendant's answer.

Before the final hearing upon the bill, answer, &c., the demurrer of the defendant to the bill of complainants, was taken up and overruled, for which defendant excepted.

At the hearing, the court decreed said slave Lucy to be given up to the complainants, and in default thereof, that defendant should pay them $550 as her value, and the further sum of $312 as her hire, and that each party should pay his own costs.

From this decree complainants appealed in the court below, and on application to this court, within the time prescribed by law, the defendant was allowed to appeal. So that the cause now stands in this court upon the appeal of both parties from the final decree as rendered by the court below.

It is insisted, on the part of the defendant, that the decree of the court below must be reversed for the reason, that the pleading and proof show that the complainants were entitled to no relief as against him. We will proceed to determine this point, as in our view its adjudication must dispose of the entire cause as to both parties.

The bequest to William Davis, in trust for the wife of the de-

fendant, Henry Davis, was, to all intents and purposes, a specific bequest. But, by the will itself, the devisee only took, and had conferred on him an inchoate or incomplete title to the slave in question. To render this title to the slave complete and perfect under the will, previous to the time allowed for the settlement of the estate, (See *Refeld et al., Exrs. vs. Bellette et al.*, 14 *Ark. Rep.* 158 ; *Carter et al. vs. Cantrell*, 16 *Ark.*) the *assent* of the complainants, as executors thereof, was absolutely and indispensibly necessary. See *Wilson vs. Rine*, 1 *Harr. & Johns. Rep.* 139 ; *Harrison vs. Hale*, 3 *Call Rep.* 188 ; 2 *Blacks. Com.* 512 ; *Farrington vs. Knighly*, 1 *Pr. Wm. Rep.* 554; *Burnett vs. Whitehead*, 2 *Ib.* 645 ; *Toller on Executors* 306.

After the grant of letters testamentary to the complainants, as executors, under the will in this case, all the testator's personalty devolved upon, and became vested in them, to be applied to the payment of the debts of the estate. Before disposing of, or giving their assent to the taking of specific bequests under the will, it was certainly their business, if not their duty, to look to the whole estate, and see whether a fund had been left sufficient for the payment of the demands of creditors. It seems from the bill in this case, that the complainants, within a very short time after the demise of their testator, *voluntarily*, upon the application of the defendant, delivered the slave Lucy to him in right of his wife under the will. We have said this surrender was voluntarily made by the complainants, for the reason, that our statute provides, that executors and administrators shall not be compelled, even by order of the probate court, to pay legacies or make distribution of estates under their charge, until after one year from the date of their letters, except in case the property bequeathed is of a perishable nature, and would become worthless by being retained, and may absolutely retain such legacies for two years, unless otherwise ordered by the probate court; but when ordered to pay over, *they may not do so*, until bond with security is given by the distributee, or legatee, to refund in proportion to the value of the property given him, in case any debt should be afterwards

established against such estate, &c. *Digest, chapter* 4 *sec,* 130, 113.

The defendant would have had no right or authority to have taken the slave Lucy without the *assent* of the complainants. But as soon as they *assented* to the taking of the slave by the defendant, under the will, from that time, the property, which was before, as we have before observed, inchoate in the defendant in right of his wife under the will, became complete and perfect and altogether valid and indefeasible, as between complainants and defendant. See (in addition to the above authorities) *McPaxton adm. vs. Dickson et al.*, 15 *Ark. Rep.* 42.

We have said the *assent* of the complainants was necessary to make this change in the property, as between them and the defendants, and it may be well to recur to the law to determine what acts shall constitute such *assent.* The law for this purpose has prescribed no specific form in which the assent shall be given or made : a very slight assent is held sufficient. See *Noel vs. Robinson,* 1 *Verm.* 94; 4 *Bacon's Abr.* 445; and this assent may be, either express or implied, absolute or conditional. See *Tollers' Exrs.* 307. An executor may not only in direct terms authorize a legatee to take possession of a legacy ; but his concurrence may be inferred either from indirect expressions, or particular acts, and such constructive permission shall be equally available. See *Andrews vs. Hurneman,* 6 *Pick. Rep.* 126. The *assent* of the executors shall have relation to the time of the testator's death. See *Tollers Exrs.* 309.

There can be no question as to the assent of the complainants, that the defendant should have and take the slave Lucy : That fact is manifest from the bill, and is rendered doubly certain from the agreed facts in the case, from which it appears, that there was an absolute consideration from the defendant to the complainants inducing them to agree that defendant should have the slave under the will, *i. e.*, the execution of the bond of indemnity by the defendant and his sureties to them. This is not only a good, but a valuable and sufficient consideration, not only to up-

OF THE STATE OF ARKANSAS. 119

TERM, 1856.] Ross et al as Exrs. vs. Davis   Davis vs. Ross et al. as Exrs.

hold a promise on their part, but likewise to support and maintain their *assent* to the taking of the slave, if a consideration were required in such cases.

We have now but to look to the consequences of the assent on the part of the complainants, that the defendant should take the slave under the will in right of his wife, so far as they and he are concerned; for the question in relation to the rights of credi-tors, is not involved in the present inquiry.

And as to this, we find it laid down that, if an executor once *assents* to a legacy, he can never afterwards retract. And notwithstanding a subsequent dissent, a specific legatee has a right to take the legacy. See 4 *Bacon's Abr.* 445 ; *Mead vs. Lord Oweny,* 3 *Atk. Rep.* 238 ; *Toller on Exrs.* 311 ; *Doe vs. Guy,* 3 *East.* 120 ; and has a lien on the assets for that specific part, and may follow them. See *Toller's Exrs.* 311. As to this, we presume the lien only exists as between the legatee and executor, and does not extend to them as against creditors. *Doe vs. Guy, ubi sup.*

We hold, therefore, in the case under consideration, as it appears from the bill, answer and proof, that the surrender to the defendant of the slave in question, was not only voluntary on the part of the complainants, but was made advisedly under the will, and that they cannot pursue the property, even though there may be a deficiency of assets to liquidate the outstanding liabilities of the estate, without other averments than those contained in the bill of the complainants ; see *Lion vs. Vick et al.,* 6 *Yerg. Rep.* 42, for there are circumstances under which property specifically bequeathed, may be followed up in the hands of legatees by executors, even where it has been surrendered under the will. But no such case is made out by the complainants in their bill in the present instance.

It seems, from the proof and admissions in this cause, that the complainants took from the defendant a refunding bond, such, we suppose, as is provided for by law in such cases. If there should be really a deficiency of assets to meet the debts, they unques-

tionably have their remedy over against the defendant and his sureties on this bond of indemnity, or they may proceed, *generally*, against the defendant in chancery, to compel him to refund the value of the specific legacy given up, that it may be applied by the court of probate to the payment of the outstanding debts of the estate.   But, as we have before remarked, the complainants cannot follow the specific property bequeathed and given up by them, for the reason, that the title to the slave has absolutely passed to, and vested in the defendant, under the will and the *assent* of the complainants, with the implied obligation in law, that he will refund—not the slave, but her value at the time of her delivery—out of his general means or estate.   See *Dooley et al. Exrs. vs. Dooley et al.*, 14 *Ark. Rep.* 123.

Entertaining the view above expressed, we are clearly of the opinion that the decree of the Clark Circuit Court in chancery, in favor of the complainants, is erroneous, in this: 1*st*. In directing the slave to be given up.   2*d*. In estimating her value beyond what it was when she was delivered to defendant, and 3*d*. In decreeing a sum of money in the way of hire for said slave, from the time of her delivery to the defendant.

It is an unquestionable rule of chancery practice, that where there is a prayer for *specific* relief, and also a prayer for *general* relief, if the state of the case, as presented by the bill, should not be sustained by the evidence, or the court should, upon principles of equity, refuse or deny the *special* relief, it may, nevertheless, give the complainant, under his general prayer, any relief warranted by the facts set up in his bill; provided it be so framed, as that the defendant would not be surprised by the other relief granted, on account of the facts entitling him to it not having been put in issue.   See *Story's Eq. Pl.* 42 ; *Colton vs. Ross*, 2 *Paige Rep.* 296 ; *Moon vs. Madden*, 2 *Eng. Rep.* 535 ; *Cook vs. Bronaugh and Bronaugh vs. Cook*, 13 *Ark. Rep.* 188.

It is provided by our statute that, upon appeals in chancery causes, when the decree appealed from is reversed, this court shall proceed to make such decision or decree, as the Circuit Court

ought to have made.   See *Digest, section* 138, *chapter* 28, *page* 244.

Conceiving that the court below, under the rule of chancery practice stated above, ought to have decreed to the complainants, under the prayer for general relief and the particular facts shown by the bill and supported by the answer and other proof, we will, therefore, reverse the decree of the Clark Circuit Court in Chancery rendered in this cause, and proceed to render such decree as we consider the complainants entitled to from the bill, the answer, exhibits and proof shown by the transcript in this cause; that is to say : That the defendant refund to the complainant the sum of $400, the value of the slave Lucy, at the time she was delivered by complainants to defendant, *to wit :* the 1st March, 1848 ; that he pay to the complainants interest on said sum of $400, at the rate of six per cent. per annum from said time, (1st March, 1848,) to the time when said amount shall be refunded hereunder : that unless said payment is made to complainants within 60 days from the time the decree herein to be rendered is entered up in the Clark Circuit Court, as the decree of said court, the same be proceeded in as in other decrees for the payment of money : that the complainants pay all the costs of this court on both appeals, and the defendant the costs of the court below, up to the date of the decree below.

Let the decree of the Clark Circuit Court in Chancery be reversed, and the decree of this court certified, &c.