SULLIVANT *v.* SULLIVANT

5-3662                                    396 S. W. 2d 279

Opinion delivered November 15, 1965.

[Rehearing denied December 20, 1965.]

*John Harris Jones,* for appellant.

*Bridges, Young, Matthews & Davis* and *Cole & Scott,* for appellee.

ED. F. McFADDIN, Associate Justice. This appeal stems from an unsuccessful effort by appellant (Myrtle Hill Sullivant White) to set aside the divorce decree which she obtained in 1927 and the property settlement she made with her husband, Bud Sullivant, in the said divorce suit. The Chancery Court denied the prayed relief, and appellant prosecutes this appeal.

On January 1, 1915 Myrtle Hill and F. D. (Bud) Sullivant were married. For convenient identification we will hereafter refer to them as "Myrtle" and "Bud." On April 30, 1927 they were divorced by decree of the Jefferson Chancery Court. A property settlement was made by Myrtle and Bud in the 1927 divorce suit whereby Myrtle received $1200.00 cash in full settlement of all claim for dower, homestead, alimony, etc. Myrtle went her way and Bud went his. She moved to Oklahoma, married Mr. White, lived with him for 22 years, was divorced by him in Arizona in 1955, and received

$11,000.00 as a property settlement in that divorce proceeding. Bud continued to live in or near Grant County, Arkansas, and by penurious living amassed property in excess of $100,000.00. Bud died September 14, 1961, leaving a will which made his brother; Birt Sullivant (present appellee), executor and chief beneficiary.[1]

After the death of Bud, Myrtle filed the present proceeding on December 26, 1961, seeking to set aside the 1927 divorce decree and property settlement, and seeking to receive the share of the estate of Bud to which she would have been entitled as widow.[2] She alleged that the 1927 property settlement was void because at all times she was under duress from Bud Sullivant, and that such duress continued unabated until his death in 1961.[3] The defendant, Birt Sullivant,[4] denied all the claimed duress, and pleaded limitations, laches, estoppel, and unjust enrichment. With the issues thus joined the cause proceeded to trial.

[1] The will was contested by other brothers and sisters but was sustained by this Court in the case of *Sullivant* v. *Sullivant*, 236 Ark. 95, 364 S. W. 2d 665.

[2] Myrtle Hill Sullivant White (present appellant) filed two pleadings: (a) she filed a petition in the original 1927 divorce case, which was Chancery Court Case No. 12,000; and when objection was made to that procedure she (b) filed a separate and independent suit (Chancery Court No. 13381), naming as defendants in the separate suit not only Birt Sullivant as executor and individually, but also several other parties. The two pleadings filed by Myrtle were consolidated, so no procedural problems, from such duplicate filing, are now presented on this appeal. In each of the pleadings she sought relief against Birt Sullivant, as executor of the estate of Bud Sullivant individually, since he was the principal beneficiary under the will of Bud Sullivant. In both pleadings filed by her Myrtle prayed alternately that: (a) the divorce decree be vacated and she take as a widow; or (b) that the divorce decree be reopened to allow her to receive the just portion to which she was entitled by way of dower, homestead, alimony, etc.; or (c) that Bud Sullivant and his executor be held as fiduciaries as to that part of the Bud Sullivant estate to which Myrtle Sullivant claims she was entitled.

[3] There were also allegations as to fraud practiced by Bud Sullivant in the procurement of the divorce and the property settlement. We find it unnecessary to detail the allegations and evidence as to fraud, since any such fraud was known by her and would have been long since barred unless she continued under duress. Thus our holding regarding duress disposes of the issues of fraud.

[4] As previously mentioned, other persons were joined as defendants, but they are immaterial to the issues herein.

The appellant testified—and was corroborated to some extent by some of her witnesses—that she was married to Bud for 12 years; that Bud beat her and otherwise mistreated her; that she was afraid of Bud from the day after she married him continuously until his death; that she agreed to the $1200.00 property settlement in the 1927 divorce decree because Bud threatened to kill her if she did not so agree; that he told her that if she ever tried to get anything more he would kill her; and that her fear of Bud continued at all times until his death. Thus, she testified that she was under duress until Bud died.

The Chancellor delivered a written Opinion which is in the record before us. He found that Myrtle was under duress when she made the 1927 property settlement, but that such duress ended long before Bud's death in 1961, and that Myrtle was barred from recovery in the present suit. Conceding, without deciding, that the Chancery Court was correct as to duress[5] in the 1927 property settlement, we nevertheless are thoroughly convinced that any such duress, as existed in 1927, ceased to exist long before this present suit was filed, and that Myrtle is barred from any relief in the present suit.

Myrtle admitted that after the 1927 decree she lived in Pine Bluff for two years; moved to New Orleans and lived there two years; then moved to Oklahoma and married J. A. White on April 28, 1933; that she and Mr. White moved to Texas; then to Arizona, where they lived together as husband and wife until 1955; that Mr. White obtained a divorce from her in Arizona in 1955; and that she received $11,000.00 property settlement in the Arizona divorce proceedings. The record shows this:

"Q. During the time you were in Kilgore, Texas, during the time you were living in New Orleans, and during the time you were living in Oklahoma City and living in Kilgore, Texas, you didn't come in contact with Bud Sullivant or any of the Sullivants did you?

[5] It is hard for us to see how Myrtle was under duress in 1927 because she was represented by most able counsel in the entire proceeding.

"A.  I did not."

Thus for a long period of time she never came in contact with Bud or any of his people, and yet she claims she was under duress even though she was married to another man for 22 years and was living in Arizona for most of those years. We refuse to believe in such "long distance" duress. Certainly the finding of the Chancellor, on the absence of continued duress, is not against the preponderance of the evidence.

The appellee herein pleaded limitation and laches. Appellant insists there could be no laches, because laches is delay with change of position; and appellant claims there was no change of position. The death of Bud and the absence of his testimony would be a change adverse to the interests of his estate. But at all events in equity stale demand is *a species of laches*. In *Skelly Oil Co.* v. *Johnson,* 209 *Ark.* 1107, 194 S. W. 2d 425, we had occasion to consider the matter of stale demand; and we there said:

"In 21 C. J. 211 it is stated: 'A stale demand or claim in its proper sense is one that has for a long time remained unasserted; one that is first asserted after an unexplained delay of such great length . . . as to create a presumption . . . that it has been abandoned. . . . It is an inherent doctrine of jurisprudence that nothing less than conscience, good faith, or reasonable diligence can call courts of equity into activity, and they will not grant aid to a litigant who has negligently slept on his rights and suffered his demand to become stale, where injustice would be done by granting the relief asked.' See *Davis* v. *Harrell,* 101 Ark. 230, 142 S. W. 156; and *Hill* v. *Wade,* 155 Ark. 490, 224 S. W. 743. See, also 30 C. J. S. 521."

We are firmly of the opinion that even if there was any duress, it ceased to exist long before 1961 and that appellant is barred by stale demand from prosecuting the present claim.

Affirmed.

HARRIS, C. J., not participating.