SHIRLEY W. JACKSON *v.* EDWIN F. JACKSON

5-6120                                    490 S.W. 2d 809

Opinion delivered February 19, 1973

*Judith Rogers*, for appellant.

*James L. Sloan,* for appellee.

JOHN A. FOGLEMAN, Justice. This case arose from an effort by appellant to set aside an order of August 4, 1966, modifying a decree of divorce entered January 8, 1964. The modification changed the custody of the two daughters of the parties from the mother to the father and provided for termination of alimony. In her petition in the chancery court, filed September 2, 1971, appellant alleged that she did not have the benefit of counsel at the time the order modifying the divorce decree was entered, or when she signed a joint motion with appellee for the modification. She alleged that the children subsequently returned to her home, and that the child support provided for in the original decree had not been paid. She prayed for reinstatement of an original property settlement agreement between the parties, for judgment for arrearages in child support in the amount of $15,750 and alimony in the amount of $10,900, for the continued maintenance of an insurance policy and the allowance of attorney's fees and court costs as well.

The first contention made by appellant is that the court had no power to modify a contractual agreement between the parties in the absence of an agreement between them which would be sufficient under the law of contracts for modification of an agreement. She argues that, since the parties entered into an extensive property settlement agreement, the court had no power to modify the agreement, even though it was incorporated into the decree, unless this agreement itself authorized a modification or the parties themselves entered into a binding agreement for modification.

The property settlement agreement was not abstracted, but appellant states that it provided for the following: conveyance of all the husband's interest in the dwelling house in which the parties had lived and all the furniture therein to the wife; life insurance coverage on the appellee until the youngest child completed her college education; $200 monthly alimony until remarriage and $250 per month for the support of the daughters, Cynthia and Courtenay (19 and 17 years of age, respectively, at the time of the hearing), who were to be in the custody of their mother, with reasonable rights of visitation reserved to their father; in case of remarriage of appellant, the pay-

ment of $100 per month in lieu of alimony, until the younger child reached the age of 18, or until the children cease to reside in the house, for application to payments of $189 per month on a mortgage on the home.

Appellant recited in her complaint for divorce that a property settlement agreement had been entered into and the decree rendered in her favor incorporated that agreement, which had been signed by both parties. The modification was made upon an unverified joint motion signed by both parties and presented to the court by James L. Sloan, appellee's attorney in this proceeding and at the time the divorce decree was entered. It was filed on the same day the court's order of modification was entered. The motion recited that Sloan was solicitor for both parties and requested that the court amend the divorce decree to change the custody of the children to appellee and to permit discharge of his obligation for alimony by the payment of $200 per month through December 1, 1966, or until the real property was sold, whichever was the earlier date, and thereafter at the rate of $150 per month for 12 months. The precedent for this order was signed by both parties.

While we agree that the court had no power to modify the property distribution provided for in the agreement, we do not agree that it was in any way limited in its powers to change the custody of the children or the amount to be paid as child support in the interest of the best welfare of the children on account of changed circumstances. The real question involved here, however, is whether there was a modification by consent of the parties, because, if there was, it cannot be doubted that the court had jurisdiction to enter an order changing the custody of the children and modifying child support payments. *Johnston* v. *Johnston,* 241 Ark. 551, 408 S.W. 2d 885; *Collie* v. *Collie,* 242 Ark. 297, 413 S.W. 2d 42; *Robbins* v. *Robbins,* 231 Ark. 184, 328 S.W. 2d 498; *Penney* v. *Penney,* 210 Ark. 16, 193 S.W. 2d 811. Authorities relied upon by appellant relate to alimony or property rights only, but they have no application where custody and support of children are involved. See *Lively* v. *Lively,* 222 Ark. 501, 261 S.W. 2d 409.

Appellant argues that there was no consent to the modification because: there was no meeting of the minds

due to appellant's reliance upon appellee, an attorney at law; appellant signed the joint motion without the advice of counsel and under such stress as to amount to duress, in order that appellee might remove the children from the state; there was no consideration for the agreement for modification because, under the modification, appellee was required to pay even less alimony than he would have paid in compliance with the original decree; there was a failure of consideration because appellee paid appellant only two payments of $150, rather than the 12 required by the modified decree and by reason of the fact that both children later returned to appellant; and appellant was grossly overreached by appellee in obtaining the modification. The chancellor obviously found that there was no merit in these arguments as the court's decree denied appellant any relief except for judgment for $270 for delinquent child support payments which appellee admitted to be due appellant. We cannot say that the chancellor's findings were clearly against the preponderance of the evidence.

Appellant testified that she found she was unable to maintain the household on the $450 in alimony and child support which appellee was paying and had requested that appellee give her more money. When this request was refused, she said that she advised appellee she would have to sell the house, but he replied that, in such event, he would reduce his payments to her. She had been employed and had borrowed an additional $1,500 to $2,000 on the security of another mortgage on the house. As a last recourse, according to her, she asked appellee to take the girls,[1] knowing that they would then be adequately fed, cared for and given other advantages. She stated that she was ignorant of the law and financial affairs, and trusted her former husband, an attorney at law, to protect her interests. She said that she did not understand the consequences of the provision in the joint motion and the order that provided for the early discharge of appellee's obligation to pay alimony. This joint motion was drawn in Sloan's office, after appellee had consulted with him, and was taken to appellant's home by appellee. She testified that she read it perfunctorily. None of the parties was present when Sloan presented the motion and obtained

---

[1] The testimony is somewhat conflicting as to whether this request was for a temporary or permanent change of custody.

the entry of the order of modification. Thereafter, appellant sold the dwelling house, netting some $4,000 after retiring the mortgage of $15,000.

Appellant admitted that she first consulted an attorney (other than the one who has represented her throughout her efforts to set aside the modification) about the modification four years after she signed the joint motion, and then did not institute the present proceeding with the aid of another attorney until about a year later. She had sought the assistance of an attorney to obtain child support when the daughters returned to her in 1968.

There is no testimony to indicate that appellee did anything to misrepresent the content of the joint motion or the proposed court order or to prevent appellant from having, or to discourage her from seeking, advice from any source she might choose, or to persuade her to forego a careful reading of the documents. She had been represented by an attorney, of course, when she filed the divorce suit and when the original decree was entered. Her belated protestation that she failed to understand the plain language of the joint motion is not sufficient basis for our saying that the chancellor's holding should be overturned for want of a meeting of the minds. There is no indication that appellant ever wanted or sought the advice of counsel before signing the joint motion and approving the proposed order, or that she did or said anything to indicate to appellee that she was relying on him for legal advice or otherwise reposing any confidence in him—her divorced husband, who had been going with his present wife at the time the divorce suit was filed, who had adamantly refused her requests for more money, and who had done nothing to indicate that she should expect him to look after her interests.

The evidence is not such as would justify a finding that appellant's joining in the motion was procured by fraud or duress, or that its content and effect were misrepresented to her in any respect. In passing we should say that, if consideration were necessary to sustain the agreement, it can be found in the change in the status of the parties, as between themselves, with respect to their obligations to the children, and appellant's relief from the necessity of maintaining a large residence, which, in

turn, enabled her to pay, from the proceeds of her sale of the house, debts she had incurred, and freed her from the burden of monthly mortgage payments. The burden devolved upon appellant to show the elements of fraud or duress by a preponderance of the evidence. *Page* v. *Woodson,* 211 Ark. 289, 200 S.W. 2d 768. Her willingness to accept these benefits of the agreement tends to negate her present assertions of fraud, duress and overreaching. See *Faulkner* v. *Mowry,* 228 Ark. 285, 307 S.W. 2d 860. A mere change of mind by a divorced wife who has received the benefits of an agreement sought by her is not a basis for setting aside a decree based upon that agreement. *Foit* v. *Foit,* 237 Ark. 953, 377 S.W. 2d 611. When the benefits to her which were, at the time of the signing of the joint motion, important are considered along with the lapse of time between the signing and the first assertion of fraud, duress or overreaching, we are inclined to doubt that appellant acted under any such compulsion because she certainly did not repudiate the agreement with the diligence an equity court should expect as a basis for the exercise of its extraordinary powers. *Page* v. *Woodson,* supra; *Sullivant* v. *Sullivant,* 239 Ark. 953, 396 S.W. 2d 279. The actions of appellant are much more consistent with a ratification of the agreement evidenced by the joint motion than with repudiation. *Page* v. *Woodson,* supra. We do not find the elements essential to a showing of fraud or duress.

There is considerable room for doubt that the actions of either party have been motivated in all instances solely by their regard for the daughters. Still, we are unable to say that there was a failure of consideration for the agreement of the parties expressed in the joint motion, assuming that the question is pertinent. The appellee took the children to his home in Des Moines, Iowa, where he is general counsel for an insurance company. They remained in his home for approximately two years and thereafter have seemed to have done about as they pleased. Testimony by appellee that he has furnished each daughter $150 per month for her support and maintenance when she was not at his home is undisputed. Even though the testimony about the letter from appellant to appellee on January 13, 1967, is subject to conflicting inferences, we cannot say that appellee was not justified in taking it to mean that payments by him in lieu of alimony should

be stopped in February. That letter, written in a very friendly tone, stated that it was "to let you know that your obligation of $150 per month for house payment was retired with the February 1 payment." In that letter, appellant also expresed her satisfaction with the sale of the house, her relief upon retirement of the debt, and her suggestion that part of the March "house payment" be used for Easter clothing for the daughters. We could not justify holding that there had been a failure of consideration in view of these expressions. Furthermore, this letter is another indication that appellant was not overreached at the time of the modification. It suggests that she was still satisfied with the state of affairs some five months later when she wrote appellee.

Appellant's contention that she is entitled to judgment for alimony arrearages at the rate of $200 per month from March 1967 to date, and $50 per month for January and February 1967, must, of course, along with her claim for child support, fail. Even in *Lively* v. *Lively*, 222 Ark. 501, 261 S.W. 2d 409, relied upon by appellant, it is recognized that the court may modify the allowance of alimony or child support or both when the parties consent. As we have demonstrated, it appears that consent of the parties was shown by a preponderance of the evidence. Alternatively, appellant contends that she should recover $250 per month for each month after the daughters returned to her home. We agree with appellant that she would be entitled to judgment for any unpaid installments of child support which appellee was required to pay not barred by the statute of limitations. But the only claim that appellant asserts is based upon the voluntary return of the daughters to her home. Both daughters remained in appellee's home, except for visits, for approximately two years, after which Courtenay stayed with her mother for about one year, then returned to her father's home for a year, after which she came back to her mother's home in Little Rock for a year and stayed at least until the time of the hearing. Appellant testified that this child only gave her $10 per month, even though she regularly received money from her father and had earnings from employment as a maid. Cynthia also returned to her father's home after about a year with her mother, and then went to California to live, but returned to her father's home and then to her mother's again. The exact times of their movements from one home to another are difficult

to ascertain because there are some discrepancies in the testimony of the parents and daughters in this regard.

Appellee furnished $500 for the down payment on an automobile for Courtenay and testified that, over the preceding five years, he had spent from $1,000 to $2,000 in addition to the monthly allowances sent to them for car insurance and repairs, medicines, drugs and doctor's bill. He also said that his employer furnished a major medical insurance policy covering them. Cynthia said that she gave her mother one-half of the $150 monthly payments she received from her father the first year and $10 per week thereafter as long as she lived with her. Courtenay said that she could not remember when she stopped giving her mother $75 per month, but admitted that she had for sometime been keeping the entire amount sent by her father, giving her mother $10 for groceries only occasionally. Of course, this arrangement seems rather unwise and unsatisfactory to us, but appellee seems not to have given his wholehearted approval to the children's leaving his home, and the mother does not seem to have expressed her dissatisfaction with this arrangement subsequent to the last return of the children, until the filing of the present petition.

Appellant states that the attorney who obtained the entry of the court order improperly represented conflicting interests, and that appellant's lack of representation by an attorney was never made known to the court. Of course, we cannot know what representations were made to the court, but the joint motion was signed by the attorney, along with the parties, as "solicitor for the parties". Appellant emphasizes the extreme caution and grave ethical considerations bearing upon representation of multiple interests in these and other matters. In the absence of other evidence sufficient to show that appellant's consent was obtained through fraud or duress, we are unable to justify setting aside the court's order on this ground.

It seems, however, that the chancellor overlooked appellant's prayer for judgment for arrearages in alimony payments and gave no judgment for payments of $150 per month for 10 months beginning with March 1967. Although appellee pleaded the statute of limitations, its bar would not operate for five years. See *Brun* v. *Rembert*,

227 Ark. 241, 297 S.W. 2d 940. For that reason, the decree is modified to give appellant judgment against appellee for $1,500.

While the dissenting opinion is based upon the premise that appellant's right to recover unpaid alimony on the basis of the decree as modified was never in issue in the trial court, we do not feel that this inference is wholly justified. It must be remembered that this is an equitable proceeding from beginning to end. Ark. Stat. Ann. § 34-1201 (Repl. 1962). The prayer for relief included a prayer "for her arrearages to date since the defendant stopped paying alimony" in the sum of $2,100 for 1967, and "for all other proper and equitable relief to which she may be entitled." In *Sannoner* v. *Jacobson*, 47 Ark. 31, 14 S.W. 458, we said: "A party is entitled to the relief which the facts shown clearly warrant whether he has prayed for much or little." In *Kelly's Heirs* v. *Mc-Guire*, 15 Ark. 555, at page 593, we said:

> Now, there can be no question of the soundness of the rule that it is only necessary to state the facts in a bill in chancery; and it tends to prolixity, and is generally improper to state matters of law; unless, perhaps, law and fact be so blended as to render it necessary. Under a prayer for general relief, the court may grant any that the facts stated will warrant, although it may be inconsistent with the special relief prayed.

See also, *Shields* v. *Trammell,* 19 Ark. 51.

In appellant's petition, it was alleged that the modification required appellee, in full discharge of alimony obligations, to pay $200 per month through December 1, 1966, or until the realty was sold and thereafter $150 per month for the next 12 months; that the realty was not sold until March 1, 1967; and that only two of the payments at $150 per month were paid and the remaining payments were never made. Evidence to sustain these allegations was produced and not denied. In *Ross* v. *Davis,* 17 Ark. 113, this court said:

> It is an unquestionable rule of chancery practice, that where there is prayer for *specific* relief, and also a

prayer for *general* relief, if the state of the case, as presented by the bill, should not be sustained by the evidence, or the court should, upon principles of equity, refuse or deny the *special* relief, it may, nevertheless, give the complainant, under his general prayer, any relief warranted by the facts set up in his bill; provided it be so framed, as that the defendant would not be surprised by the other relief granted, on account of the facts entitling him to it not having been put in issue.

Appellee has not intimated that he was surprised on this score or that the matter was not in issue in the trial court, even though in her brief here appellant clearly asserted her right to recover these 10 payments of $150 as a minimum. He relies upon appellant's letter of January 13, 1967, and her failure to make any demand upon him until she filed her petition on September 2, 1971, which he suggests was after the expiration of five years from the date of the modification.

Where a prayer for a judgment was not included in the specific relief sought, we held that a chancery court was warranted in rendering such a judgment, in the absence of the element of surprise, because the facts alleged and proved warranted the rendition of the judgment. *Morgan* v. *Scott-Mayer Commission Co.,* 185 Ark. 637, 48 S.W. 2d 838. In *Grytback* v. *Grytback,* 216 Ark. 674, 227 S.W. 2d 633, in the interest of justice, we modified a decree denying a wife a divorce but granting a divorce to her husband by allowing alimony of $20 per month. On rehearing, the husband insisted that this court arbitrarily granted relief on an issue that was not before the court. We recited the wife's allegations that she was without funds to support herself and her prayer for temporary relief out of funds belonging to the husband and for all other equitable relief and pointed out that much of the testimony was directed toward the husband's financial condition and ability to pay. We rejected the husband's contention on the basis that the statement of facts in the pleading and not the prayer for relief constituted the cause of action and that the court may grant whatever relief the facts pleaded and proved might warrant. We said that they warranted the allowance of alimony and that the husband was in no position to plead surprise.

In *Taylor* v. *Taylor,* 224 Ark. 328, 273 S.W. 2d 22, another divorce case, upon the authority of *Grytback* we said:

> We recognize that the prayer of the appellee's complaint did not specifically ask for the exact property she was ultimately awarded, but this court is committed to the rule that the facts pleaded, and not the prayer for relief, form the basis of the cause of action and the court may grant whatever relief the facts pleaded and proved warrant, absent surprise to the adversary which is not present here.

We do not take the opening statement by appellant's attorney to limit the relief to be granted in any way. It specifically asks that appellant receive all her back alimony payments and generally asks for any other relief that the court might see fit to grant.

Since we cannot say that the chancellor's findings are otherwise against the preponderance of the evidence, we must affirm the decree as modified. Because of this recovery, appellant is allowed $500 for her attorney's fees, and expenses over and above the costs of the case, which are taxed against appellee.

The cause is remanded for enforcement of the modified decree.

BYRD, J., dissents to the modification.

CONLEY BYRD, Justice, dissenting. I dissent to that part of the majority opinion that awards the appellant a judgment for $1500 and attorney fees. That issue was raised for the first time on appeal. In her petition in the trial court appellant made the following prayer:

> "WHEREFORE, Petitioner prays that the original contract and property settlement agreement be reinstated, for her arrearages to date since the Defendant stopped paying alimony, in the sum of:
>
> 1967 $2,100.00
> 1968 $2,400.00
> 1969 $2,400.00

1970 $2,400.00
1971 $1,600.00 (August inclusive)

for a total of $10,900.00 arrearages, for attorney's fees and court costs, for a provision that support payments and alimony payments be made through the Office of the Master in Chancery, for setting aside of the order of August 4, 1966, for an increase in the support payments due the minor children in the sum of $200.00 per child per month or provision be made that a trust fund or other adequate insurance policy be taken out to insure the enforcement of this decree, for proof that the insurance policies that were ordered to be maintained until the college education was completed are still in force and for all other proper and equitable relief to which she may be entitled."

At the hearing on the merits the trial court asked for opening statements. Appellant at that time concluded her opening statement with this statement:

"Therefore, at this time, Shirley Jackson is asking that the motion and order be set aside and the original agreement be reinstated, that she receive all her back alimony payments, that she receive the back child support payments, which she hasn't received, that the defendant and respondent, Edwin Jackson, continue to pay medical bills for the children, that the support payments be raised in keeping with Mr. Jackson's income, standard of living and ability to pay, that she receive an attorney's fee, costs, interests on all money that hasn't been paid to this date, for the insurance policies which was ordered to be maintained by the Court to be reinstated or a provision made for adequate coverage for the children and for any other relief that the Court sees fit."

As can be seen from both the prayer and opening statement, appellant did not ask for any relief under the August 4, 1966 order. Her only request was for relief under the original divorce decree and in her testimony before the court she only testified as to what she should recover under the original divorce decree. Con-

sequently, I submit that the $1500 judgment here awarded by the majority was raised for the first time on appeal and at that time the five year statute of limitations had run.

While the majority seem to think that appellant's January 13, 1967, letter to the effect that his $150 per month obligation was "retired with the February 1, payment" is not to be taken as a waiver or estoppel, I point out that no demand was made on appellee until the brief herein was filed in October 1972. Furthermore, it appears to me that the present Mrs. Jackson and her two children by appellee would have a right to rely upon the written waiver—for they, too, no doubt, rely upon appellee for support and financial assistance.

For the reasons stated, I respectfully dissent.