Kathlynn Sue (Arledge) JOHNSON *v.*
James Franklin ARLEDGE

75-35                                              527 S.W. 2d 917

Opinion delivered October 13, 1975

*Holloway & Haddock*, for appellant.

*E. W. Brockman, Jr.*, for appellee.

JOHN A. FOGLEMAN, Justice. This appeal involves the custody of Karen and Sarah Lynn Arledge, minor daughters of appellant and appellee, who were divorced by decree of the Chancery Court of Jefferson County entered April 19, 1968. Custody of the daughters and an older brother was awarded appellant and appellee was ordered to pay $200 per month

child support. On August 20, 1968, the chancery court granted the joint petition of the parties to permit appellant to remove the children to Texas. Between that time and March 12, 1974, numerous petitions and motions relating to support payments were filed. On the 31st day of August, 1970, the chancery court abated support payments by appellee for the months of January, February, and March 1970 because of appellee's being unemployed, required him to pay $100 onto the registry of the court for money improperly withheld by him during June, July and August of 1970, and reduced the amount of the required support payments to $150 per month, payable in semi-monthly installments of $75 each. On March 7, 1974, appellant filed her petition alleging that appellee had removed their minor children from Texas to Arkansas, without her consent, and had failed and neglected to pay child support in violation of the chancery court's decrees. Citation was issued on this petition requiring appellee to appear on March 11 to show cause why he should not be adjudged in contempt of court. Appellee responded with a general denial filed on March 12 and also filed a motion for a change in the court's decree as to custody by awarding him custody of the two daughters, alleging that conditions had materially changed since the decree of divorce and other orders of the court and that the change in custody was in the best interest of the two children. The next day appellant filed a response denying that there was any change in conditions warranting a change of custody and alleging that his failure to comply with the custody and support orders of the court was intentional and that he should be denied any relief until he had complied with the court's orders. Appellee also filed later responses alleging that he had complied with the orders of the court, that he didn't remove the children without the consent and permission of appellant, denying that he had neglected to make required payments, and alleging that he had reduced payments with the consent of appellant and that she was barred from raising any question about his failure to make support payments.

A hearing on the various pleadings was held on August 27 and the court's opinion was rendered on August 29 and a decree entered on September 6 for August 29. The chancery court held that the appellee was in arrears on his child sup-

port payments in the sum of $1,853.33, as of March 1, 1974. It found that appellee had not willfully violated the court's orders in this respect because the evidence reflected that the children had spent much of the time after September 1, 1970 with appellee, the parties had agreed among themselves that appellee's obligation could and should be reduced, and that appellee had been unemployed for a substantial period of time after September of 1970. The court also found appellee in contempt of court for removing the children from appellant's home in Garland, Texas to his own home in Pine Bluff, Arkansas without sanction by the court or by appellant but declined to punish him for contempt, holding that there were extenuating and mitigating circumstances surrounding the removal. An attorney's fee of $250 was awarded appellant.

Appellant argues that the court erred in changing its custody order, saying that the record was void of any change in circumstances. We certainly cannot say that the court's change in custody was an abuse of discretion or that its holding in that respect was clearly against the preponderance of the evidence. There was evidence that appellant had lived with her present husband in the home with these children prior to their marriage and that the children were fully aware of the fact that they were not married and were informed of the marriage rather casually after an extended period of cohabitation. According to the children, relationships in the home deteriorated after appellant's present husband moved into the home.

The son of the parties left and came to Arkansas sometime in 1973, because of his displeasure with the conditions. While some of his objections seem rather trivial and relate to his objection to strict discipline, he said that his mother and stepfather discouraged his participation in music or school activities, took one-third of his earnings for his room and board, objected to his using his mother's pots and pans to prepare his own food, which they required him to do. He stated that appellant and her husband became very cold toward all three children and seemed not to want to have anything to do with them. He also related that at times appellant told the children that she hated them, called him

vulgar names, and sometimes spoke to him disparagingly in front of his sisters. He stated that whenever his mother was displeased with him she would derogatorily compare him with his father. He was of the opinion that his sisters would be better off living with their father and stepmother in that, in contrast to their previous situation, they would have the benefits of affection. He said that he had left his sisters reluctantly.

Karen was 16 years of age on July 21, 1974. She had been living with her father and stepmother in Pine Bluff since March 6, 1974. She said that she had come home on the preceding Monday and had found that her mother was gone, leaving a note saying, "Karen, remember mother loves you no matter what happens." She testified that her mother was out of town on numerous occasions for approximately a week at a time. She felt that after Mr. Johnson came into the picture there was not much of a home and that it was difficult for the children to get along with her mother and stepfather thereafter. She related that her mother had on occasions said that she would pay their father $100 per month if he would take the children and keep them happy. According to her, there was a complete lack of communication between children and parents but numerous arguments. Karen did not know of her mother telling neighbors to look in on them when she was away nor did she know of any occasion when anyone ever had. She stated that she was allowed $15 a week out of which she had to pay for her own meals, even when the family ate out, and that, after encouraging her to buy expensive clothing, Mr. Johnson took $4.50 per week out of her allowance until the clothing was paid for. She stated that there were marital difficulties between her mother and stepfather on several occasions. She expressed a decided preference for living with her father.

Sarah was 12 years old when she testified. Her testimony largely corroborated that of her brother and sister. She attributed the change in conditions at home to her mother's association with her present husband. She said that her mother had told her that Johnson had given her the choice of living with him or with her children.

This testimony certainly indicates a decided change of circumstances after the previous custody orders had been entered. It is quite significant to us that appellant did not testify and has never denied any of the statements made by her children under oath.

Appellant argues vigorously that since appellee was in contempt of court for violation of its previous orders relating to custody and support of the children, the chancery court erred in modifying the custody decree. She relies upon *Gilmore v. Gilmore*, 239 Ark. 1140, 396 S.W. 2d 936; *Casey v. Self*, 236 Ark. 496, 367 S.W. 2d 114 and *Carnes v. Butt*, 215 Ark. 549, 221 S.W. 2d 416. These cases do not relate to changes of custody. *Gilmore* involved the effort of a father in contempt for willful disobedience of orders requiring payment of child support to have a reduction of the amount of payments required of him when cited for contempt. The others involved attempts of parties who had violated an injunction to test its validity on citation for contempt. Appellee did not question the validity of the previous orders. He did seek modification. However appropriate the holding in *Gilmore* may be where a modification of a support order is involved, the fundamental approach to custody cases in this state is incompatible with the rule appellant asks us to apply here. In cases where a change in a child custody decree is sought, our primary concern is for the welfare of the child and the desires of the parents are secondary. *Townsend v. Lowrey*, 238 Ark. 388, 382 S.W. 2d 1. The child's welfare is the controlling consideration and custody is not awarded as a reward to, or punishment of, either parent. *Nutt v. Nutt*, 214 Ark. 24, 214 S.W. 2d 366; *Miller v. Miller*, 208 Ark. 1058, 189 S.W. 2d 371. It is well settled doctrine that, in considering modification of a previous award of custody, the courts should confide custody to the parent most suitable therefor. *Kirby v. Kirby*, 189 Ark. 937, 75 S.W. 2d 817. Our chancery courts have continuing authority to revise a child custody order upon changed circumstances, which, when considered from the standpoint of the welfare of the child, justify a transfer from one parent to the other. *Myers v. Myers*, 226 Ark. 632, 294 S.W. 2d 67. In this respect, modification of the decree rests in the discretion of the trial court. *Phelps v. Phelps*, 209 Ark. 44, 189 S.W. 2d 617.

In other jurisdictions in which proposed modifications of child custody orders are viewed in substantially the same light, the fact that the party seeking to gain or retain custody of a child has violated court orders or has been in contempt of court in that respect is a factor to be taken into consideration in the court's exercise of discretion to grant or deny a modification of custody orders but is not so conclusive on the matter as to require the court to act contrary to the best welfare of the child. See *Shaffer* v. *Shaffer,* 61 Wash. 2d 669, 379 P. 2d 995 (1963); *Kalousek* v. *Kalousek,* 77 Idaho 433, 293 P. 2d 953 (1956); *MacWhinney* v. *MacWhinney,* 248 Minn. 303, 79 N.W. 2d 683 (1956); *S* v. *G,* 298 S.W. 2d 67 (Mo. Ct. App. 1957); *Foster* v. *Foster,* 300 S.W. 2d 857 (Mo. Ct. App. 1957); *Holland* v. *Holland,* 150 Colo. 442, 373 P. 2d 523 (1962). See also, *Kahn* v. *Kahn,* 252 A. 2d 901 (D.C. Ct. App., 1969); *Sullins* v. *Sullins,* 280 P. 2d 1009 (Okl. 1955); *Jones* v. *White,* 209 Ga. 412, 73 S.E. 2d 187 (1952). To hold otherwise, we would have to permit the desire to punish a parent to override the paramount consideration in all child custody cases, i.e., the welfare of the child involved. We have heretofore said that the courts must be keenly alert to the necessity of preventing the shortcomings or merits of the parents from overshadowing that which is best for the child. *Carr* v. *Hall,* 235 Ark. 1044, 363 S.W. 2d 223. The chancellor committed no error in this respect.

Appellant's remaining point gives us some concern. The chancellor held that appellee was in arrears in the payment of child support in the sum of $1,853.33, based upon the court's records of payments made. He made it quite clear that this finding was for the purpose of considering the charge of contempt of court in violation of the court's decrees. After making this finding, the court held that appellee had not willfully violated the court's orders for support payments because the children had been with him a great deal of the time during which the arrearage accrued, he had been unemployed for a substantial time during that period, and the parties had agreed between themselves that his obligation could and should be reduced.

We cannot agree with appellant that this action constituted an attempt by the court to modify its decree retroac-

tively or to remit accumulated arrearages. The chancellor has not indicated that appellee was relieved of his obligation to pay the amount due appellant for child support. He simply held that appellant's violation of the order was not willful and contemptuous. We do agree with appellant, however, that appellee should be required by the court to pay whatever amount of child support payments was due appellant. We would render a judgment here if we could be certain what that amount was and of the manner in which payment might best be enforced. The record is incomplete on this point because the court would not permit it to be developed due to an erroneous view of pleading requirements.

Appellant had alleged in her petition that appellee had failed and neglected to pay the sums ordered to be paid, praying that he be cited for contempt of court. After appellee filed his motion to change the custody of the two daughters, appellant filed a response containing allegations that appellee had failed to comply with the court's orders providing for child support. Her prayer was that his motion be dismissed, that he be found in contempt of court and punished therefor, and "for all proper relief". Appellee filed a response alleging that the parties had entered into an agreement for a reduction of payments and that appellant was barred from raising any question concerning his alleged failure to make support payments.

After appellant's trial counsel had thoroughly examined appellee about his arrearages, appellee's attorney claimed surprise if appellant was seeking judgment for these arrearages. Appellant's attorney stated she was. The chancellor ruled that she could not pursue this remedy, since there was not a prayer for judgment in any of her pleadings, unless he granted permission for her to amend her pleadings to conform to the proof. Appellee's attorney later moved that the pleadings be amended to conform to the proof and that his client be permitted to plead the three-year statute of limitations.[1] Appellant's attorney joined in the motion. The court, noting that appellant had actually previously moved for such an amendment, denied both motions, over the objec-

---

[1]See, however, *Jackson v. Jackson*, 253 Ark. 1033, 490 S.W. 2d 809, as to the statute of limitations.

tions of both parties, clearly indicating that this ruling was based upon the earlier one that there was no specific prayer for judgment for arrearages. He stated that the matter of back child support was pertinent, under the pleadings, only to the contempt issue and that no judgment for arrearages would be granted. Appellant then rested her case upon the court records of payment and appellee did not offer any evidence other than his own testimony previously given. The chancellor indicated that he might, if he found appellee in contempt, fix terms for payment of the arrearages.

Even though appellant did not specifically pray for judgment for arrearages, she was, in equity, under her prayer for general relief entitled to any relief in equity that would be justified upon proof of the facts alleged. *Whitten Developments, Inc.* v. *Agee,* 256 Ark. 968, 511 S.W. 2d 466; *Jackson* v. *Jackson,* 253 Ark. 1033, 490 S.W. 2d 809; *Realty Investment Co.* v. *Higgins,* 192 Ark. 423, 91 S.W. 2d 1030. The actual result of our decisions is that, where a plaintiff in equity asks for particular relief, he cannot be granted relief inconsistent with that sought, in the absence of a prayer for alternative relief and pleadings by him so framed as to put the facts reflected by the evidence in issue. *Baldwin* v. *Brown,* 166 Ark. 1, 9, 265 S.W. 976, 979, on rehearing; *Realty Investment Co.* v. *Higgins,* supra. A judgment for arrearages was not inconsistent with the specific relief sought and, as the court recognized, the amount of the arrearages was clearly in issue.

Still we cannot say, with assurance, that the evidence was fully developed on this issue, so the case is remanded to the trial court for a determination of the amount for which appellant may be entitled to judgment for child support arrearages.

Roy, J., not participating.